730 P.2d 1064

STATE of Idaho, Plaintiff-Appellant,

v.

Roger L. AMES, Defendant-Respondent.

No. 16343.

Court of Appeals of Idaho.

Dec. 30, 1986.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Dale W. Kisling, Pocatello, Michael F. Heyrend (argued), and Thomas P. Melloy (Watkiss and Campbell), Salt Lake City, Utah, for defendant-respondent.

WALTERS, Chief Judge.

A jury found Roger Ames guilty of assault with intent to commit a serious felony in connection with a sexual attack on an elderly lady. Ames was not able to locate an alibi witness for the trial. When the

witness was later found, Ames sought a new trial based on newly discovered evidence stemming from the witness's testimony, which would support Ames' alibi. The district court granted the motion, and the state appeals, arguing that the newly offered testimony does not justify the granting of a new trial. We vacate the order granting a new trial and remand the case for further proceedings.

The facts surrounding this case are detailed in *State v. Ames*, 109 Idaho 373, 707 P.2d 484 (Ct.App.1985), and need not be recounted here. It is sufficient to note that Ames was charged with assaulting an elderly woman early one morning, with the intent to commit a sexual act and murder. At his trial, Ames denied assaulting the victim and presented alibi evidence to show that he could not have been the assailant at the victim's home at the time the incident was claimed to have occurred. Ames' alibi was that, at the time the assault allegedly occurred, he was in a hotel lobby waiting for a taxi to take him home. However, Ames was unable to locate the taxi dispatcher, who worked at the hotel, to have her confirm his presence. The dispatcher was later found, and, after his conviction was affirmed on appeal (*State v. Ames*, *supra*), Ames filed a motion for a new trial based on newly discovered evidence. Ames convinced the district court that the dispatcher had been unavailable at trial despite his counsel's efforts to locate her. The district court granted the motion for a new trial. On appeal, the state challenges that decision, alleging that the dispatcher's testimony does not justify a new trial.

■ Granting or denying a motion for a new trial is discretionary with the district court, and unless that discretion has been abused, we will not disturb the court's order on appeal. *State v. Palin*, 106 Idaho 70, 675 P.2d 49 (Ct.App.1984). A motion for a new trial based on newly discovered evidence must satisfy the test adopted in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976). The requirements under that test are:

> (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

*Id.*, at 97 Idaho 691, 551 P.2d 978, quoting 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 557, at 515 (1969).[1] If the alleged new evidence does not meet each of the requirements set forth in *Drapeau*, the district court should not grant a motion for a new trial.[2] Where the court's exercise of discretion is predicated upon factual findings and upon the application of legal standards to the facts found, we apply the "clearly erroneous" test to the findings and we determine whether the legal standards have been properly identified. *Cf. Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App.1983) (prescribing standard for review of discretionary ruling on motion for relief from default judgment).

The state asserts that Ames has not met any of the four elements of the *Drapeau* test. It is sufficient to note at this point that the dispatcher's testimony, if believed, would tend to corroborate Ames' assertion that he could not have been present at the victim's home when the incident allegedly occurred. We examine each of the four elements in turn.

## I

■ First, the state asserts that the "newly discovered evidence" is not really new because the *facts* contained in the dispatcher's affidavit concerning Ames' activities the evening and morning of the assault

1. This language has been retained in the 1982 edition of Wright's text. *See* 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 557, at 315 (1982).

2. These standards are the same whether the motion for new trial is based on newly discovered evidence under I.C. § 19–2406(7) or under the auspices of I.C.R. 34 (permitting a new trial "if required in the interest of justice").

were known to Ames at the time of the trial. Such a position seriously distorts the first element of the *Drapeau* test. Newly discovered evidence is evidence which could not have been discovered by the exercise of due diligence either before or at the time of trial. *In re Hill,* 460 So.2d 792 (Miss.1984). Under the state's approach the testimony of a newly discovered alibi witness could never be "newly discovered evidence" because the testimony would tend to corroborate facts already believed by the defendant. The state's position contradicts the whole theory underlying an alibi witness. Indeed, no defendant ever would seek to produce a "new" alibi witness who is going to *contradict* the facts previously asserted by the defendant.

Although the content of an absent witness' testimony may be *predicted,* it is not "known" until that witness is contacted. If the witness cannot be contacted until after trial, the evidence is "newly discovered" within the meaning of the first element of *Drapeau.* Here, the dispatcher's affidavit indicated that she had taken a job caring for an elderly gentleman and was traveling around the country with him or living at his home in Arizona. Ames' attorney informed the court that no forwarding address was discovered for the dispatcher and her whereabouts were unknown. The prosecutor's office also could not locate the dispatcher. Nothing in the record leads us to conclude that an exercise of due diligence would have turned up the witness' location. Because Ames' attorney was not able to speak with the dispatcher before trial, he did not know the substance of her testimony. If believed, the dispatcher's testimony would be related directly to the question of Ames' opportunity to have committed the assault—the very issue addressed by the alibi evidence. We conclude that the testimony of the dispatcher would clearly be newly discovered evidence meeting the first requirement of the *Drapeau* test.

## II

█ The state next contends that the dispatcher's testimony would be "cumulative in part and conflicting in part" as to the testimony of Ames and another of his witnesses, the taxi driver who picked Ames up at the hotel. This contention is based on a mistatement of the second element of the *Drapeau* test. The second requirement under *Drapeau* is that the "evidence is material, not merely cumulative or impeaching." As we noted under our discussion of the first element of the *Drapeau* test, the court should examine the newly discovered evidence to determine its relation to the substance of the moving party's defense. Newly discovered evidence that is *"merely* cumulative or impeaching" (emphasis added) will not pass muster under this requirement.

█ Here, the testimony of the dispatcher would be clearly material to the substance of Ames' defense. Ames testified at trial that on the evening of the assault he was at the hotel where the dispatcher was working. The dispatcher's affidavit indicated that Ames was at the hotel and had been there for approximately one hour before the taxi picked him up. The dispatcher's log indicated a fare was picked up at the hotel, where Ames said he was waiting, at 1:56 a.m. The dispatcher's affidavit indicated that the time noted on the log was usually the time the cab was requested. The victim testified that the assault occurred at 1:30 a.m., although she admitted that it could have been 2:30 a.m. Thus, if the assault occurred at 1:30, and Ames had been at the hotel constantly for one hour before the cab was called, the dispatcher's testimony would establish Ames' alibi. Although the testimony arguably would be "cumulative" insofar as it would corroborate Ames' own story, it is not "merely" cummulative. It adds substantially to Ames' defense by presenting independent evidence of Ames' whereabouts during the alleged time of the assault. Thus, the newly discovered evidence also meets the "materiality" element of the *Drapeau* test.

## III

█ For reasons soon to be apparent, we next consider the state's argument that

the record does not support the district court's finding that Ames' trial counsel satisfied the fourth *Drapeau* requirement by using "diligence" to locate the dispatcher prior to the trial. The court found that counsel had used his "best efforts" to locate the witness. However, we think that any difference between "best efforts" and "diligence" is only semantical. The state, in fact, does not seem to question the standard so much as it asserts that the evidence does not support the district court's implicit finding of diligence on the part of Ames' attorney. From our view of the record, however, the state's assertion that the defense attorney did not use diligence in locating the witness in question is substantially contradicted by the record.

The record discloses that Ames' attorney contacted the cab driver who picked Ames up, but the driver could only identify the dispatcher as "Ruby." The attorney also contacted other people at the hotel to learn "Ruby's" last name and whereabouts. The only information the attorney could discover was that "Ruby" had taken a job caring for an elderly gentleman and was traveling around the country with him, a fact later borne out by the dispatcher's affidavit. Additionally, the attorney maintained contact with the prosecutor's office, which also had been trying unsuccessfully to locate "Ruby." The attorney further discovered that neither the hotel nor the cab company had a forwarding address for her. Finally, the attorney indicated in his affidavit that a subpoena for "Ruby" was prepared, but because she could not be located, it was never served.

The state asserts that "a review of the employee records of the Sunshine Taxi Company, for whom [the dispatcher] worked for more than 1½ years, should have revealed her last name and probably much more information." Such an assertion is speculative and, considering the other efforts made by the defense counsel, does not establish a lack of diligence on the attorney's part. Also, nothing in the record suggests that, even if the dispatcher's last name had been discovered, further attempts at locating her would have been successful. The question of diligence is one of fact, and we are not persuaded that the judge's finding on this point was clearly erroneous.

## IV

▮▮▮▮ Finally, we turn to the third *Drapeau* element—whether the evidence would have "probably produced an acquittal." The district court concluded that "the evidence, if presented to the jury, *may have* effected the acquittal of defendant." (Emphasis added.) The state contends that there is a difference between the standard evinced by the court's language and the standard required under *Drapeau*. In response, Ames argues that there is no requirement that the trial court "parrot" the language of *Drapeau*.

We agree that the use of identical language is not necessary. However, the district court's use of the words "may have effected [an] acquittal" leaves us unsure of the district court's determination of the possible impact of the new evidence on the verdict. Under *Drapeau*, the new evidence must be such that it "will probably produce an acquittal." From the district court's choice of words, we are unsure whether the court was indicating the *possibility* of an acquittal or the *probability* of an acquittal. A bare possibility of acquittal will not sustain Ames' burden under the *Drapeau* test. In examining the question of the probability of an acquittal, we conclude that the words "will probably produce" relates to the existence of a reasonable doubt concerning Ames' guilt. We think the judge, exercising his discretion and taking proper advantage of his proximity to the events in this case, *could* have determined that the new evidence was likely to raise a reasonable doubt, but he did not make that determination. Therefore, we must remand to the district court for clarification of this point.

The order of the district court is vacated and the case remanded. On remand the district court is directed to clarify its decision relating to the third *Drapeau* element as interpreted in today's opinion.

BURNETT and SWANSTROM, JJ., concur.