128 P.3d 960

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Brandon EDDINS, Defendant–Appellant.**

No. 30841.

Court of Appeals of Idaho.

Jan. 6, 2006.

Randall, Blake & Cox, Lewiston, for appellant. Scott M. Chapman argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

PERRY, Chief Judge.

Brandon Eddins appeals from the district court's order denying his motion for a new trial. We affirm.

## I.

### FACTS AND PROCEDURE

In September 2003, an officer received a report that the driver of a pickup was intoxicated. The officer positioned his patrol vehicle along the expected route of the pickup. Shortly thereafter, the officer observed a pickup, occupied by two people, that matched the description of the one reported. As the pickup drove by, the officer was able to see the face of the driver for approximately five seconds but could not discern the facial features of the passenger. The officer, who had previously encountered Eddins on several occasions, recognized him as the driver. The officer followed the pickup and activated his overhead lights. Instead of pulling over, the pickup increased speed and a high-speed chase ensued. The officer discontinued pursuit due to safety concerns and lost sight of the pickup. A few minutes later the officer again observed the pickup unoccupied in front of a residence.

As the officer exited his vehicle, Eddins approached from the residence. At first Eddins told the officer that the pickup had not been driven. Eddins then indicated that the pickup had been driven but that he had been a passenger, not the driver. Eddins was arrested and charged with eluding a police officer. I.C. §§ 49–1404(1), 49–1404(2).

At trial, Eddins's father testified that Eddins's brother, Justin, was driving the pickup on the night in question. Eddins also called

Justin as a witness, in anticipation that he would testify that he, and not his brother, was the driver of the pickup. However, Justin exercised his right against self-incrimination and refused to testify as to whether he was the pickup's driver. The jury found Eddins guilty.

Eddins filed a motion for a new trial, alleging that he had obtained newly discovered evidence. Eddins attached an affidavit of Justin, which asserted that Justin was the driver of the pickup and that he waived his right against self-incrimination. The district court denied Eddins's motion, finding that although the proffered evidence may have been newly available, it was not newly discovered. This appeal followed.

## II.

## ANALYSIS

■ On a defendant's motion, the trial court may grant a new trial to the defendant if required in the interest of justice. I.C.R. 34. Idaho Code Section 19-2406 lists circumstances under which the trial court is permitted to grant a new trial, including when new evidence is discovered that is material to the defense and that could not have been discovered and produced at trial with reasonable diligence. *See* I.C. § 19-2406(7). Motions for new trial based on newly discovered evidence are disfavored and should be granted with caution. *United States v. Turns,* 198 F.3d 584, 586 (6th Cir.2000); *United States v. Freeman,* 77 F.3d 812, 817 (5th Cir.1996); *Stuart v. State,* 118 Idaho 865, 870, 801 P.2d 1216, 1221 (1990). The caution exercised by courts in setting aside a jury's verdict reflects the importance accorded to considerations of repose, regularity of decision-making, and conservation of scarce judicial resources. *United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992).

■ A decision on a motion for new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf,* 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct.App.1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Whether a trial court properly applied a statutory provision to the facts of a particular case is a question of law over which we exercise free review. *State v. Horn,* 124 Idaho 849, 850, 865 P.2d 176, 177 (Ct.App.1993). A motion for a new trial based on newly discovered evidence must disclose: (1) that the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *State v. Drapeau,* 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

Here, the district court found that Eddins's proffered evidence was not "newly discovered" and, thus, did not address whether that evidence met the other three requirements of the *Drapeau* test. Eddins contends that Justin's testimony was unavailable at Eddins's trial and, thus, Justin's subsequent decision to incriminate himself represented newly discovered evidence within the meaning of the first prong of the *Drapeau* test.

However, newly available evidence is not synonymous with "newly discovered evidence." *United States v. Jasin,* 280 F.3d 355, 368 (3d Cir.2002); *see also United States v. Glover,* 21 F.3d 133, 138-39 (6th Cir.1994). In the federal circuit courts, the majority rule is that testimony known to the defendant at the time of trial, but unavailable due to the witness's assertion of the privilege against self-incrimination, is not newly discovered evidence within the meaning of Federal Rule of Criminal Procedure 33, which governs motions for new trials. *See Jasin,* 280 F.3d at 364-65. The majority rule has been applied in situations where the witness who was unavailable to testify was a codefendant. *See Jasin,* 280 F.3d at 364; *Freeman,* 77 F.3d at 817.

The majority approach to newly available evidence establishes a straightforward, bright-line standard and is anchored in the plain meaning of the text of Rule 33, which contemplates granting a new trial on the ground of "newly discovered evidence" but makes no reference to evidence that is newly available. *Jasin,* 280 F.3d at 368. Additionally, courts generally consider exculpatory testimony offered by codefendants after they have been sentenced to be inherently suspect. *Id.* at 365. To allow the testimony of codefendants to qualify as newly discovered evidence once they have determined that testifying is no longer harmful to themselves would encourage perjury. *Jasin,* 280 F.3d at 365; *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (9th Cir.1992).

Eddins asserts that, because his brother was not a codefendant, the rationale underlying the majority rule is inapplicable to this case. Eddins therefore contends that, by applying the majority rule to his motion for a new trial, the district court failed to act consistently with applicable legal standards. We disagree.

Initially, we note that the risk of prosecution to Justin in testifying that he was the driver of the pickup was minimal following Eddins's trial. To meet its burden of proving that Justin was the driver beyond a reasonable doubt, the state would have to rely on the testimony of Eddins's father, Justin's offer to incriminate himself on Eddins's behalf, and limited circumstantial evidence suggesting Justin was the driver. Moreover, to establish that the crime of eluding a police officer had been committed, the state would have to rely on the officer's testimony that the driver of the pickup failed to comply with the officer's attempts to pull the vehicle over. During Eddins's trial, the officer testified that he was confident that he recognized Eddins as the driver and was certain that Justin was not the driver. Eddins cross-examined the officer extensively regarding the officer's identification of Eddins. Accordingly, Justin bore little risk that any incriminating statements made at Eddins's trial could later lead a jury to find him guilty of the crime of eluding an officer in the event Eddins was later acquitted and Justin

thereafter charged. In addition to the minimal risk Justin faced by agreeing to testify, Justin had every reason to help his brother avoid the consequences of the jury's finding that Eddins was guilty of eluding an officer. Therefore, we reject Eddins's contention that the policy concerns underlying the refusal by courts to accept belated offers to testify by codefendants as newly discovered evidence is absent in the instant matter.

Eddins also relies on *State v. Ames,* 112 Idaho 144, 730 P.2d 1064 (Ct.App.1986) to support his position that the majority rule should be limited to instances involving codefendants. In *Ames,* the defendant had been unable to locate an alibi witness to testify at his trial. The witness had moved out of state without a forwarding address. Because the defendant was unable to speak with the witness, he was unaware of the substance of her testimony. Following his trial, the defendant located the witness, filed a motion for a new trial, and attached the witness's affidavit. On appeal, the state contended that the witness's testimony was not newly discovered evidence because the defendant had been aware of the facts that were contained in the witness's affidavit. This Court disagreed and concluded that, although the "content of an absent witness' testimony may be *predicted,* it is not 'known' until that witness is contacted." *Id.* at 147, 730 P.2d at 1067. The defendant's awareness of facts corroborating his alibi did not preclude a witness's testimony supporting those facts from being considered newly discovered evidence. *See id.* at 146–47, 730 P.2d at 1066–67. The substance of the witness's testimony was unknown to the defendant at the time of trial and, thus, her testimony was newly discovered within the meaning of the first requirement of the *Drapeau* test. *Id.* at 147, 730 P.2d at 1067.

■ The instant case is readily distinguishable from situations such as the one in *Ames* where a witness is unavailable because he or she cannot be located. The determining factor when evaluating whether evidence is newly discovered is not whether the testimony came from a codefendant who had asserted his or her privilege against self-incrimination but, rather, whether the defendant was aware of the substance of the testi-

mony at the time of trial. *Jasin,* 280 F.3d at 367. Newly available codefendant testimony is banned only if the defendant was aware of the substance of the testimony. *Id.* at 368 n. 10. In contrast to the defendant in *Ames,* Eddins was able to contact Justin prior to trial and was aware of the substance of his testimony, which was that Justin was the driver of the pickup. We conclude that to be "unknown" within the meaning of the first prong of the *Drapeau* test, the defendant must be unaware of the substance of an exculpatory witness's testimony.

Eddins urges us to adopt the minority approach to newly discovered evidence that was adopted by the First Circuit Court of Appeals in *United States v. Montilla–Rivera,* 115 F.3d 1060 (1st Cir.1997). Under this approach, the newly discovered evidence language found in the rule governing motions for a new trial encompasses evidence that was unavailable. *Id.* at 1066. In *Montilla–Rivera,* the court concluded that the better rule is not to categorically exclude the testimony of a codefendant who asserted his Fifth Amendment privilege at trial when determining whether evidence is "newly discovered." *Id.* Rather, courts should consider it, albeit with great skepticism, in context of all prongs of the circuit's four-part test. *Id.* Thus, the court determined that belated statements of codefendants aimed at exculpating the moving defendant were not per se insufficient. *Id.* at 1067. However, the court cautioned that "our judgment here turns on unusual circumstances including the weakness of the government's case against the defendant, significant efforts to procure the codefendant's testimony before his own conviction, and the plausible explanation as to why the evidence was not available earlier." *Id.* at 1067–68. The court indicated

that it shared the general skepticism concerning codefendant's statements and that its opinion by no means conferred any automatic right to a new trial when a codefendant offers to testify. *Id.* at 1067.

Regardless of whether the *Montilla–Rivera* position is well founded, it is not provided for by Idaho law. Idaho Code Section 19–2406 sets forth the only grounds permitting the grant of a new trial and, therefore, limits the instances in which the trial court's discretion may be exercised. *State v. Cantu,* 129 Idaho 673, 675, 931 P.2d 1191, 1193 (1997). Section 19–2406 clarifies that, in order to be the basis for a new trial, the defendant must demonstrate that he or she was both unable to discover and unable to produce the evidence at trial with reasonable diligence. *See* I.C. § 19–2406(7). It is apparent from the wording of the statute that the inability to produce evidence at trial, standing alone, does not provide a basis for a trial court to grant a motion for a new trial. Similarly, to satisfy the first prong of the *Drapeau* test, the defendant must demonstrate that the evidence was newly discovered and unknown at the time of trial. *Drapeau,* 97 Idaho at 691, 551 P.2d at 978. In contrast, the first prong of the test used in the First Circuit for determining whether a new trial should be granted is whether the evidence was unknown *or unavailable* to the defendant at the time of trial. *Montilla–Rivera,* 115 F.3d at 1066.

Neither Section 19–2406 nor Idaho Supreme Court jurisprudence permit a trial court to grant a new trial on the basis of newly available evidence. Accordingly, the plain meaning of Section 19–2406 does not allow us to interpret Justin's offer to testify as "newly discovered evidence." [1]

---

1. The dissent contends that, because Justin's testimony was "unusable" at Eddins's trial, it was not evidence and, instead, merely constituted information. Thus, the dissent relies on the premise that information is transformed into "evidence" only when it becomes usable or admissible in a court proceeding. The dissent therefore urges that Justin's post-trial offer to testify constituted newly discovered evidence. We disagree. A witness's shifting desire to testify does not make that witness's testimony newly discovered evidence. *Turns,* 198 F.3d at 587. "Evidence" refers to something, including testi-

mony, which tends to prove or disprove the existence of an alleged fact. BLACK'S LAW DICTIONARY 595 (8th ed.2004). Not all evidence is usable or admissible. *See e.g.* I.R.E. 104, 401, 403, 410, 802, 804. In this case, evidence tending to support the alleged fact that Justin was the driver included the father's testimony, Justin's testimony, and circumstantial evidence such as Justin's disappearance once the pickup was parked. Because Justin exercised his privilege against self-incrimination, his testimony was unavailable. *See* I.R.E. 804(a)(1). Nevertheless, that unavailability did not cause Justin's

In addition, to the unambiguous language of Section 19–2406, the facts of this case do not present unusual circumstances. Unlike the weak case against the defendant in *Montilla–Rivera*, here the officer testified that he had a long-standing relationship with Eddins, that he was certain that he saw Eddins driving the pickup, that he knew Justin, and that Justin was not driving the pickup. Eddins was found with the pickup within minutes of it being parked and gave conflicting stories regarding whether the pickup had been driven at the time of his arrest.

Eddins further contends that this Court's opinion in *Small v. State*, 132 Idaho 327, 971 P.2d 1151 (Ct.App.1998) establishes that a witness's offer to testify after asserting his or her privilege against self-incrimination at trial constitutes "newly discovered evidence." In *Small*, this Court affirmed the district court's summary dismissal of an application for post-conviction relief and concluded, in part, that the post-conviction applicant was not entitled to a hearing as to whether a new trial should be granted. This Court held that the district court had not erred in finding that the newly discovered evidence would not probably produce an acquittal. In reaching its conclusion that the third prong of the *Drapeau* test had not been met, this Court determined that the applicant satisfied the first prong because, when the codefendant was called to testify at the post-conviction applicant's trial, he asserted his privilege against self-incrimination. Because the codefendant did not offer to testify for the post-conviction applicant until eleven years after her trial, "his current offer to testify on behalf of [the applicant] is new and was not known to her at the time of trial." *Id.* at 334, 971 P.2d at 1158. Nonetheless, in *Small*, whether the first prong of the *Drapeau* test had been met was not argued before this Court and, in its discussion of that prong, this Court conducted no analysis and cited to no authority. In the instant case, whether a witness's offer to testify after his or her assertion of the right against self-incrimination at the defendant's trial can be considered newly discovered evidence is

squarely before us. Accordingly, to the extent that the dicta in *Small* is inconsistent with this opinion, it should be disavowed.

A trial court is permitted to grant a new trial when required in the interest of justice. I.C.R. 34.

> Although defendants are tireless in seeking new trials on the ground of newly discovered evidence, motions on this ground are not favored by the courts and are viewed with great caution. No court wishes a defendant to remain in jail if he has discovered evidence showing that he is not guilty, but after a man has had his day in court, and has been fairly tried, there is a proper reluctance to give him a second trial.

3 WRIGHT, KING & KLEIN, FEDERAL PRACTICE & PROCEDURE § 557 (3d ed.2004) (footnotes omitted). *See also Stuart*, 118 Idaho at 870, 801 P.2d at 1221; *Drapeau*, 97 Idaho at 691, 551 P.2d at 978. The exacting standards set forth in the *Drapeau* test were developed in response to these issues. *See Drapeau*, 97 Idaho at 691, 551 P.2d at 978. Thus, the policy concerns addressed by the Court in *Drapeau* are best served by adhering to the plain meaning of our statute and adopting the majority rule that a witness's belated offer to testify is not newly discovered evidence unless the defendant was unaware of the substance of his or her testimony at the time of trial. The standard we adopt today does not categorically prohibit newly available testimony from satisfying the first prong of the *Drapeau* test but, rather, establishes that newly available testimony is not "newly discovered" if the substance of that testimony was known to the defendant prior to trial.

■ Finally, we must dispel any implication raised in the dissenting opinion that the application of the majority rule to this case deprives Eddins of receiving a fair trial. The unavailability of Justin's testimony did not prevent Eddins from presenting other evidence from which the jury could have formed a reasonable doubt as to whether Eddins was

testimony to cease being evidence, and Justin's post-trial decision to incriminate himself did not

make his testimony newly discovered.

the driver of the pickup. The brothers' father, who owned the pickup, testified that on the night in question he permitted Justin to drive the pickup because he believed Justin had a valid driver's license and that he prohibited Eddins from driving the pickup because he was aware that Eddins's driver's license was suspended. The father also testified that he saw the brothers inside the pickup shortly before the officer began following it, that Justin was driving, and that Eddins was riding in the passenger seat.

Further, following the father's testimony that Justin was driving the pickup, Eddins called Justin to the stand. Justin testified that he was Eddins's brother. The brothers stood shoulder to shoulder and allowed the jury to compare their physical characteristics. Eddins then asked Justin if he was the driver of the pickup and Justin responded that he elected to "take the Fifth Amendment." Thus, the manner in which Eddins presented Justin's exercise of his privilege against self-incrimination raised an inevitable inference that Justin's response would have been that he was the pickup's driver. Additionally, when the officer encountered Eddins after losing sight of the pickup, the second occupant had disappeared and Eddins approached from a residence. The testimony at trial also revealed that, contrary to the father's belief, Justin's driver's license was suspended. Evidence showed that the keys to the pickup were found neither with the pickup or on Eddins's person. This evidence, in combination with the strategic placement of Justin on the witness stand, corroborated the father's testimony that Justin was driving the pickup. Thus, Eddins was not denied a fair trial due to an inability to present a defense based upon a theory that he was *not* the driver.

The facts of this case illustrate the distinction that arises between an accused's ability to prepare his or her defense when the substance of a witness's testimony is known and an accused's ability to prepare his or her defense when the accused cannot contact the witness or utilize his or her testimony in any manner. Eddins knew of Justin's testimony prior to trial, used it to its fullest advantage, and the post-trial change in whether that testimony was "available" did not cause it to be "newly discovered."

## III.

### CONCLUSION

We conclude that newly available testimony does not qualify as "newly discovered evidence" within the meaning of the first prong of the *Drapeau* test unless the substance of that testimony was unknown to the defendant at the time of trial. Accordingly, the district court correctly applied the law to the facts of this case and did not abuse its discretion in refusing to grant Eddins a new trial based on his brother's belated offer to testify that he was the driver of the pickup. The district court's order denying Eddins's motion for a new trial is hereby affirmed.

Judge GUTIERREZ concurs.

Judge LANSING, dissenting.

I respectfully dissent; I believe that in the specific circumstances of this case, Brandon Eddins' motion for a new trial should be granted if Justin Eddins will give in-court testimony supporting the motion.

The majority concludes that Justin's proffered testimony is not newly discovered evidence because it was known, though unusable by Brandon, at Brandon's trial. I disagree. The standard for a new trial based upon newly discovered evidence articulated in *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976) requires newly discovered *evidence*, not newly discovered information. In this context, "evidence" is testimony or tangible items that can be presented to the trier of fact in a judicial proceeding. Justin's testimony therefore was not "evidence" known to Brandon at the time of Brandon's trial. Brandon was aware of the information held by Justin, but it was not evidence because it could not be presented in court. Justin's new willingness to testify therefore gives Brandon newly discovered evidence even if its content was previously known. In the administration of justice, I can discern no reason to differentiate between a witness who could not be found prior to trial, as in

*State v. Ames,* 112 Idaho 144, 730 P.2d 1064 (Ct.App.1986), and a witness who could not be compelled to testify, as in the present case. I would therefore hold that Brandon's motion for a new trial satisfies the four-part test enunciated in *Drapeau.*

The majority opinion relies upon the rule, followed in many jurisdictions, that evidence is not "newly discovered" if it is newly available exculpatory testimony from a co-defendant who could not be compelled to testify at the defendant's trial. That rule has generally been applied in cases where the co-defendant becomes willing to testify after his or her own prosecution has been concluded and the co-defendant, having been either convicted or acquitted of the charge following the defendant's original trial, no longer has anything to lose by claiming responsibility and exculpating the defendant. As explained in *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (1992):

> Testifying now ... is safe for the co-defendants, as they have already been sentenced. It would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves. They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial. Such testimony would be untrustworthy and should not be encouraged.

This policy reason to distrust the belated confession of a co-defendant is unquestionably legitimate and weighty, but it does not justify a categorical rule that a third party's confession exonerating the defendant can never qualify as newly discovered evidence. This policy consideration can be more justly factored into the *Drapeau* analysis under the third prong of the *Drapeau* test, which requires a showing that the new evidence will probably produce an acquittal. The untrustworthiness of a confession from a co-defendant who has nothing to lose could well lead a trial court to conclude that the evidence would not be likely to produce an acquittal if the defendant were granted a new trial. This is precisely how we applied the *Drapeau* test in *Small v. State,* 132 Idaho 327,

333–36, 971 P.2d 1151, 1157–60 (Ct.App. 1998), where we concluded that the co-defendant's offer to give exculpatory testimony eleven years after the defendant's conviction was newly discovered evidence, but affirmed the trial court's finding that the co-defendant's testimony probably would not produce an acquittal and therefore did not warrant a new trial for the defendant. Several other jurisdictions are in accord with this approach. *See, e.g., United States v. Montilla–Rivera,* 115 F.3d 1060 (1st Cir.1997); *People v. Shoals,* 8 Cal.App.4th 475, 10 Cal.Rptr.2d 296, 302 (1992); *Totta v. State,* 740 So.2d 57, 58 (Fl.Dist.Ct.App.1999); *State v. Condon,* 157 Ohio App.3d 26, 808 N.E.2d 912, 915 (2004). Allowing the trial court to consider the credibility of the co-defendant's confession in this manner would be a flexible and far more just application of the *Drapeau* standards than is a categorical rule disregarding the testimony from a witness who was known before trial but who could not be compelled to testify. The inflexible rule applied by the majority not only deprives wrongfully convicted defendants of an opportunity to demonstrate their innocence—it also allows the guilty to escape prosecution in circumstances like those presented here where the confessor has never been prosecuted and cannot be prosecuted so long as the conviction of the first defendant stands.

Importantly for the present case, the policy justification, as expressed in *Reyes–Alvarado,* for disallowing a co-defendant's confession as newly discovered evidence is *not applicable here,* for Justin does not have any immunity from prosecution. He could very well be charged if Brandon is acquitted in a new trial. The state asserts, and the majority opinion agrees, that Justin faces no realistic risk of prosecution because the prosecutor could never charge him in the face of the police officer's insistence that Brandon was the driver. I disagree, for the prosecutor would possess an abundance of evidence that could lead a jury to conclude that the officer was mistaken or that his perception was colored by the fact that it was Brandon, not Justin, that the officer was able to locate and arrest on the night in question. In addition to having Justin's own confession of guilt, the prosecutor could

present the testimony of Justin's father identifying Justin as the driver; and if Brandon were acquitted in a new trial, he then could be compelled to testify against Justin. There is also significant circumstantial evidence that Justin was the driver, for when the officer relocated the pickup a few minutes after having lost sight of it, it was Justin who had disappeared, perhaps having fled from consciousness of guilt. Brandon remained nearby, but the keys to the pickup were not found on Brandon nor in the vehicle, leading to an inference that Justin possessed the keys. Although the prosecutor could refuse to prosecute Justin notwithstanding the availability of all of this inculpatory evidence, the choice that may be made by the prosecutor cannot be known to Justin and he is, at this point, facing a very real risk of prosecution.

To ensure that Justin's testimony will, in fact, be available at a new trial for Brandon, the district court could require Justin to testify at an evidentiary hearing, subject to cross-examination, before acting on Brandon's motion. This procedure would ensure that a transcript (or videotape) of Justin's testimony could be used at Brandon's new trial should Justin again attempt to invoke the Fifth Amendment privilege or otherwise become unavailable to testify, and the transcript could also be utilized in any subsequent prosecution of Justin.

For the foregoing reasons, I would vacate the district court's order denying Brandon's motion for a new trial and remand for an evidentiary hearing at which Justin's testimony could be received.