IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 32947

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | 2007 Opinion No. 29 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: May 22, 2007 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| MICHAEL THERON HAYES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Order denying motion for a new trial, reversed, and case remanded.

Michael T. Hayes, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Michael Theron Hayes appeals the denial of his motion for a new trial on one count of lewd conduct with a minor. He contends that the district court erred when it held that the newly discovered testimony of an absent witness was not likely to produce an acquittal. We reverse, and remand.

## I.

## BACKGROUND

The State's case at trial included evidence of the following. Hayes was acquainted with the parents of fifteen-year-old T.L., and in November 2001, he began to visit the family with increased frequency. In April 2002, Hayes began to flirt with T.L., give her money, and request that she have sexual intercourse with him. T.L. initially refused, but later they began a sexual relationship. Over the Fourth of July holiday in 2002, Hayes took T.L., her parents, and her sister on a four-day camping trip in Kootenai County. An individual named Thomas Pratt joined the group for part of the trip. According to T.L.'s subsequent testimony, Hayes had sexual

1

intercourse with her on each of the four days of the camping trip. In September 2002, T.L. decided to run away from home because she had an argument with her father. She went to Hayes's home in Shoshone County, where she and Hayes had sexual intercourse.

Hayes was charged in Kootenai County with four counts of lewd conduct with a minor under the age of sixteen, Idaho Code § 18-1508, for his alleged conduct with T.L. over the Fourth of July holiday. Hayes was also separately charged in Shoshone County with one count of lewd conduct with a minor for sexual contact with T.L. in September. The Kootenai County and Shoshone County cases were joined for trial. At trial, the State also presented evidence of several other uncharged incidents of sexual contact between Hayes and T.L.

The jury found Hayes guilty of the Shoshone County charge. Of the four Kootenai County charges, however, the jury returned a guilty verdict on only one--for lewd conduct that was alleged to have occurred on July 6. The jury found Hayes not guilty of the allegation of lewd conduct on July 4, and was unable to reach a verdict on the counts charging offenses on July 5 and 7. For the two convictions--one count in each county--the district court imposed concurrent unified forty-year sentences with minimum terms of twenty years. We affirmed these convictions in *State v. Hayes,* Docket Nos. 30574 and 30591 (Ct. App. Jan. 19, 2006) (unpublished).

Before trial, Hayes's attorney had been unsuccessful in attempts to locate and contact Thomas Pratt, who had been present during the Fourth of July trip in Kootenai County. After the trial, however, Hayes was able to find Pratt in Connecticut. Pratt thereafter signed an affidavit in which he contradicted T.L.'s testimony concerning the events of July 6 and provided an alibi for Hayes. Pratt's affidavit stated that he had been with Hayes during two of the times when T.L. had testified that the sexual acts occurred, including the alleged incident on July 6, and that the alleged offenses never occurred. Asserting that this affidavit provided newly discovered evidence, Hayes moved for a new trial in the Kootenai County case.[1] The district court determined that the affidavit constituted newly discovered, material evidence that had been unavailable at trial despite diligent efforts on the part of the defense. The court nevertheless denied Hayes's motion for a new trial because the court concluded there was no probability that this new evidence would produce an acquittal. Hayes appeals.

---

[1] Hayes's motion did not request a new trial on the Shoshone County charge.

## II.

## ANALYSIS

On a defendant's motion in a criminal case, the trial court may grant a new trial in the interest of justice. Idaho Criminal Rule 34. Idaho Code section 19-2406 specifies the permissible grounds for a new trial, and authorizes a new trial when the defendant demonstrates that there exists new evidence material to the defense that could not have been produced at the trial with reasonable diligence. I.C. § 19-2406(7). Newly discovered evidence will warrant a new trial only if it satisfies a four-part test, showing that: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) it will probably produce an acquittal; and (4) failure to learn of the evidence was not due to a lack of diligence on the part of the defendant. *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976); *State v. Ames*, 112 Idaho 144, 146, 730 P.2d 1064, 1066 (Ct. App. 1986). We review the denial of a motion for new trial for an abuse of discretion. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). A motion for a new trial based on newly discovered evidence involves questions of both fact and law. An abuse of discretion will be found if the trial court's findings of fact are not supported by substantial evidence or if the trial court does not correctly apply the law. *See Fullmer v. Collard*, 143 Idaho 171, 173, 139 P.3d 773, 775 (Ct. App. 2006). Motions for a new trial based on newly discovered evidence are disfavored and should be granted with caution, reflecting the importance accorded to considerations of repose, regularity of decision making, and conservation of scarce judicial resources. *State v. Eddins*, 142 Idaho 423, 425, 128 P.3d 960, 962 (Ct. App. 2006).

In the proceedings below, the State did not dispute that Pratt's testimony constituted newly discovered evidence, nor did it contend that Hayes's failure to present the evidence at trial was caused by any lack of diligence on his part. The State argued, instead, that Pratt's testimony was merely impeaching, thus failing the materiality test, and that it would not be likely to produce an acquittal. On appeal, the State entirely changes its tack. It contends that Pratt's testimony is not newly discovered and that Hayes did not demonstrate that the defense team was diligent in attempting to locate Pratt before trial, but the State makes no argument that Pratt's testimony is not material, nor any argument in support of the trial court's conclusion that if Pratt's testimony were admitted at a new trial, it would not likely lead to an acquittal.

3

We conclude that Hayes's evidence satisfies all four prongs of the *Drapeau* test, and he is therefore entitled to a new trial.

## A.      The Evidence Is Newly Discovered

Pratt's testimony constitutes newly discovered evidence.  It is entirely analogous to evidence that we held to be newly discovered in *Ames*.  In that case, the defendant, who was charged with assault, testified at trial that at the time of the alleged offense, he had been in a hotel lobby waiting for a taxi.  The defendant was unable, however, to locate the hotel taxi dispatcher who could confirm his presence.  After Ames's trial, the dispatcher was found and produced an affidavit corroborating his story, which provided the basis for the defendant's motion for a new trial.  We held that while the facts in the dispatcher's affidavit were known to the defendant before trial--the defendant knew whether he was standing in the lobby at the time of the alleged assault--the dispatcher's affidavit was nevertheless newly discovered evidence.  As we stated, "Although the content of an absent witness' testimony may be *predicted*, it is not 'known' until that witness is contacted.  If the witness cannot be contacted until after trial, the evidence is 'newly discovered' within the meaning of the first element of *Drapeau*."  *Ames*, 112 Idaho at 147, 730 P.2d at 1067.   *See also State v. Caldwell*, 112 Idaho 748, 750-51, 735 P.2d 1059, 1061-62 (Ct. App. 1987).  Thus, a defendant's awareness of facts concerning his alibi does not preclude a witness's testimony supporting those facts from being considered newly discovered. *Eddins*, 142 Idaho at 426, 128 P.3d at 963.  Rather, in *Eddins*, this Court stated that the determining factor is whether the defendant was aware of the substance of the witness's testimony at the time of trial. *Eddins*, 142 Idaho at 426-27, 128 P.3d at 963-64.  Because Hayes was unable to find Pratt and ascertain the substance of his testimony prior to trial, the evidence is newly discovered in the same manner as the dispatcher's testimony in *Ames*.

## B.      The Evidence Is Material

Pratt's alibi testimony is also material and is not merely cumulative or impeaching. Substantive testimony may be distinguished from impeachment evidence as follows:

> Unlike substantive evidence which is offered for the purpose of persuading the trier of fact as to the truth of a proposition on which the determination of the tribunal is to be asked, impeachment is that which is designed to discredit a witness, i.e. to reduce the effectiveness of his testimony by bringing forth the evidence which explains why the jury should not put faith in him or his testimony. Examples of impeachment evidence would include prior inconsistent statements,

4

bias, attacks on [the] character of a witness, prior felony convictions, and attacks on the capacity of the witness to observe, recall or relate.

*State v. Marsh*, 141 Idaho 862, 868-69, 119 P.3d 637, 643-44 (Ct. App. 2004). In the present case, Pratt's affidavit does not merely attack T.L.'s credibility; it provides an alibi for Hayes at a time when he was alleged to have committed acts of lewd conduct. It is direct evidence that the alleged acts did not occur and is therefore unquestionably material.

**C.      Hayes Demonstrated Diligent Efforts to Find the Witness Before Trial**

The record also supports the district court's determination that Hayes's defense team made diligent efforts to locate Pratt so that his testimony could be presented at trial. Hayes's affidavit stated that Pratt had given him an address where Pratt could be reached "back east," and Hayes believed he had put the paper with Pratt's address into a briefcase that was later seized by the State. Pratt believed, however, that the address was in New York, and so an investigator for Pratt's attorney called every "Thomas Pratt" in New York in an attempt to find the witness. This effort was unsuccessful because Pratt was then living in Connecticut. Hayes's attorney also tried to ascertain Pratt's address via Pratt's mother, but was again unsuccessful.

The State argues that this evidence was largely inadmissible because it was presented through Hayes's own affidavit that included much hearsay information describing steps taken by the defense attorney's investigator. The State is barred from making this challenge to the admissibility of the evidence on appeal, however, because no objection to Pratt's affidavit was made in the district court. Indeed, there was a specific colloquy at the outset of the hearing on Pratt's motion for a new trial in which the prosecutor was queried as to whether he had objections to the form of the evidence presented, and defense counsel expressly stated that if there would be any challenge to the affidavits, he would call live witnesses to present testimony. The prosecutor made clear that he would not object to the form of the evidence. Accordingly, the State's argument that the hearsay portions of Pratt's affidavit were inadmissible has been waived.

The State also argues that Hayes did not show due diligence because he could have submitted a discovery request for the briefcase that may have contained the address. We acknowledge that there is a gap in the information in Hayes's affidavit as to whether any effort was made to examine the contents of the briefcase or, if so, whether Pratt's correct address was actually contained there. Nevertheless, it is a reasonable inference from Hayes's uncontradicted affidavit that the address in the briefcase would have been a New York address rather than the

Connecticut address where Pratt was living at the time of Hayes's prosecution. In light of the other extensive efforts by the defense team to locate Pratt, the absence of any evidence from the prosecutor (who presumably was aware of the contents of the briefcase) that Pratt's correct address actually was within the briefcase, and the absence of even any argument by the prosecutor that Hayes failed to meet this diligence prong of the *Drapeau* test, we find no error in the district court's holding that Hayes's defense team exercised reasonable diligence in searching for Pratt before Hayes's trial.

**D.      The Evidence Probably Will Produce an Acquittal**

Lastly, we come to the basis of the district court's denial of Hayes's motion, the court's conclusion that the Pratt testimony would not satisfy the third prong of the *Drapeau* test because it would not likely cause an acquittal. The trial testimony established that when Hayes took T.L. and her family on a camping trip over the Fourth of July weekend, Pratt joined them on July 5 and 6. Pratt's affidavit directly contradicted T.L.'s testimony regarding activities on July 6, the date of the offense for which the jury returned a guilty verdict. T.L. testified that on that day, the group had a barbecue picnic, after which her parents took the boat for a ride while she stayed behind on the pretext that she would do the dishes. She said that she had sex with Hayes while her parents were away, and that she told her sister that the pair were going to have sex so the sister would leave. T.L.'s sister did not verify these events, though she did testify that she saw T.L. and Hayes hugging and kissing in the motor home on July 6 while the parents were checking on food. In Pratt's affidavit, he denied that T.L.'s parents went on a boat ride on July 6, an assertion that was consistent with the testimony of T.L.'s mother, who said that she did not take the boat out with her husband until the next day. Pratt's affidavit also said that he and Hayes, not T.L., cleaned the area where they had picnicked, and that T.L. could not have washed the dishes because all of the tableware was made of paper. Most importantly, Pratt stressed that Hayes could not have had sexual relations with T.L. on July 6 because Pratt was with Hayes throughout the entire day. Pratt's affidavit also underscored another weakness of T.L.'s story-- that although T.L.'s testimony about the July 6 incident accounted for the location of her sister and her parents during the alleged encounter, it did not account for Pratt's whereabouts. In sum, T.L.'s testimony describing where and when a sexual encounter occurred on July 6 was entirely uncorroborated, and with Pratt's testimony, it would be contradicted by both Pratt and T.L.'s mother.

Before resolving whether the district court was correct in holding that Pratt's testimony would not probably produce an acquittal, we must also consider other evidence that was heard by the jury and considered by the district court. There was extensive evidence, much of it corroborated by third parties, that Hayes and T.L. had been engaged in a sexual relationship all summer. Incidents described by T.L., and corroborated by either her sister or a friend, included sexual relations during two trips to Montana as well as the incident of lewd conduct for which Hayes was convicted in Shoshone County. On the other hand, there was also extensive impeachment evidence challenging T.L.'s general veracity and reliability. This included evidence that she had made an apparently false accusation, later recanted, that her father had been sexually abusing her. Several years earlier she had made another apparently false accusation of sexual abuse by a man with whom her mother was then having a relationship. Some of T.L.'s testimony about the specific charged offenses was contradicted by the testimony of other trial witnesses.

The jury ultimately found Hayes guilty of only two of the five lewd conduct charges on which he went to trial, and on one of those, the Shoshone County charge, T.L.'s testimony describing an event of sexual intercourse was corroborated by her girlfriend who was with T.L. at Hayes's house.[2] Thus, notwithstanding evidence of a lengthy sexual relationship between Hayes and T.L., it is apparent that the jury did not fully credit T.L.'s testimony and was hesitant to convict on her word alone, either acquitting Hayes or being unable to arrive at a verdict on three counts that were supported solely by T.L.'s uncorroborated testimony.

Given the significance of Pratt's testimony directly controverting the allegations of an offense on July 6, the fact that T.L.'s mother's testimony also contradicted T.L.'s claims as to that date, the evidence calling into question T.L.'s general veracity, and the jury's apparent distrust of much of T.L.'s story, we conclude that the district court erred in determining that the addition of Pratt's testimony at a new trial would not probably produce an acquittal on the count for which Hayes now stands convicted.

---

[2] The girlfriend said she was told that Hayes and T.L. were going to have intercourse, after which the two went into Hayes's bedroom, and when T.L. emerged she reported that sexual relations occurred.

## III.

## CONCLUSION

The district court correctly held that Hayes's evidence in support of his motion for a new trial satisfied prongs one, two and four of the *Drapeau* test, but incorrectly found that prong three--the probability of an acquittal--was not satisfied. We therefore reverse the order denying Hayes's motion for a new trial and remand for further proceedings.

Chief Judge PERRY and Judge GUTIERREZ **CONCUR.**