**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36319**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 610 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: August 25, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| RONALD E. ANDERSON, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. John H. Bradbury, District Judge.

Order granting motion for new trial, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for respondent. Eric D. Fredericksen argued.

_____

LANSING, Chief Judge

The State appeals from the district court's order granting Ronald E. Anderson's motion for a new trial after he was found guilty by a jury of forcible rape. We reverse.

**I.**

**FACTS AND PROCEDURE**

In June of 2008, Anderson and the victim, S.M., were co-workers at a remote lodge in Idaho County. The lodge had a number of trailers where the employees of the lodge, including Anderson and S.M., resided on-site. After a night of drinking, S.M. reported that she had been raped by Anderson in S.M.'s trailer. There were cuts on S.M.'s lips and finger, as well as other injuries. Anderson was charged with raping S.M. by force or violence, Idaho Code § 18-

1

6101(3).[1] Anderson acknowledged that he and S.M. had engaged in intercourse but maintained that it was consensual.

During discovery, the State disclosed the names and addresses of a number of witnesses to events occurring before and after the alleged attack. Most of the witnesses were lodge employees, and the State identified the addresses for these witnesses as "the lodge." Among these disclosed witnesses was a man named Jason Black. At trial, neither side called Black as a witness, but other lodge employees testified. The jury returned a guilty verdict.

Anderson thereafter filed a motion for a new trial on the ground of newly discovered evidence. The motion contended that Black's testimony constituted newly discovered evidence because Black had left the lodge's employment shortly after the incident without leaving a forwarding address, pretrial defense efforts to locate him had been unsuccessful, and Black had now been located. Black testified at an evidentiary hearing on the motion, disclosing his prospective trial testimony. The district court granted Anderson's motion, determining that Black's testimony was newly discovered and that if it had been presented during the trial, it would probably have produced an acquittal. The State appeals.

## II.

## ANALYSIS

On a criminal defendant's motion, the trial court may grant a new trial if required in the interest of justice. Idaho Criminal Rule 34. Idaho Code Section 19-2406 enumerates circumstances under which the trial court may grant a new trial, one being the discovery of new evidence that is material to the defense and that could not have been discovered and produced at trial with reasonable diligence. *See* I.C. § 19-2406(7). Motions for new trial based on newly discovered evidence are disfavored and should be granted with caution, reflecting the importance accorded to considerations of repose, regularity of decision-making, and conservation of scarce judicial resources. *State v. Stevens*, 146 Idaho 139, 144, 191 P.3d 217, 222 (2008); *State v. Hayes*, 144 Idaho 574, 577, 165 P.3d 288, 291 (Ct. App. 2007); *State v. Eddins*, 142 Idaho 423, 425, 128 P.3d 960, 962 (Ct. App. 2006).

---

[1] Idaho Code § 18-6101 was amended in 2010, and the former subsection (3) is now codified as I.C. § 18-6101(4). 2010 IDAHO SESS. LAWS, ch. 352, § 1 at 920-21.

We review a decision on a motion for new trial for an abuse of the trial court's discretion. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When reviewing a discretionary decision, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). An order for a new trial based on newly discovered evidence is justified only where (1) the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) the evidence is material, not merely cumulative or impeaching; (3) the evidence will probably produce an acquittal; and (4) failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976). *See also Stevens*, 146 Idaho at 144, 191 P.3d at 222. If any one of these elements is not demonstrated, the motion should be denied.

Here, the State challenges the district court's findings as to each of the four components of the "*Drapeau* test." Because we agree with the State's contention that the district court abused its discretion when determining whether Black's testimony would probably have produced an acquittal, we do not discuss the State's assignments of error regarding the other elements.

In testifying at the hearing on Anderson's new trial motion, Black said that he was S.M.'s platonic roommate in a trailer at the lodge, and on the night in question he was at home when S.M. arrived after she had been drinking in the lodge's bar with Anderson and other employees. Black said that S.M. was intoxicated and told him to go tell Anderson to "come talk to me." According to Black, S.M. was "passed out" on the couch when he left, but he relayed the message to Anderson, drove Anderson back to the trailer and then left. Based primarily on this discreet portion of Black's testimony, the district court concluded that this new evidence would probably produce an acquittal. The court reasoned that Black's recollection that the victim was intoxicated contradicted S.M.'s trial testimony and a responding officer's testimony that she was *not* intoxicated, and that this would be significant to the jury in evaluating S.M.'s ability to accurately recollect the details of the alleged rape. The court further concluded that Black's testimony that S.M. had summoned Anderson to the trailer also contradicted S.M.'s trial

3

testimony and was compelling evidence of consent. The district court found it significant that a nurse practitioner who testified at trial was, in the words of the court, "unable to determine the cause or age of the cuts" to the victim's lips. The district court concluded that the "paucity of physical evidence [presented at trial] reduced the question to one of credibility," and that the identified portion of Black's testimony would "probably lead the jury to doubt the veracity of [the victim's] claims, creating reasonable doubt on the part of the jury."

The State contends that the district court abused its discretion by considering only that portion of Black's testimony favorable to the defense while overlooking his testimony that would have been unfavorable to the defense, and that the district court further erred by failing to consider the totality of the evidence adduced at trial in evaluating whether an acquittal would probably result from Black's testimony. When a court evaluates whether newly discovered evidence will probably produce an acquittal, the new evidence must be considered in the context of all of the material evidence adduced at trial. An illustrative case is *Whiteley v. State*, 131 Idaho 323, 955 P.2d 1102 (1998), where the defendant had been convicted of kidnapping and rape, but sought a new trial based on the testimony of a previously undiscovered witness. The new witness testified that he saw the victim and the defendant together at a gas station on the night of the alleged offense but noticed nothing unusual in the woman's behavior, for she moved about freely and did not appear apprehensive, scared or worried. Noting that the *Drapeau* test applied in this circumstance, our Supreme Court said that although the trial court considered how the new testimony might alter the result in a new trial, it erred by failing to analyze whether the "testimony would be sufficient to overcome the other evidence of guilt, such as [the defendant's] possession of a stun gun and handcuffs which, according to the victim, were used by [the defendant] in committing the kidnaping." *Id.* at 327, 955 P.2d at 1106.

Just as the potential effect of new evidence must be evaluated with all of the trial evidence in mind, it is likewise necessary to consider *all* of the new witness's testimony, not just that which is favorable to one side or the other. We agree with the State that, when these principles are properly applied, it is clear that a new trial was not warranted here.

At trial S.M. acknowledged that she had consumed some vodka before going to the bar and four beers while at the bar, but she denied being drunk. She said that on getting back to her trailer, she spoke to Black but said nothing about asking him to invite Anderson to the trailer. She testified that she fell asleep on the couch before Black left and awoke to discover Anderson

4

sitting on the end of the couch with his pants down. She testified that Anderson attacked her and that she struggled, but that Anderson overpowered her and raped her. She said that when she tried to push his face away Anderson bit her finger and when she tried to scream, he punched her in the face. She said that this occurred four or five times. S.M. said that she was ultimately able to distract Anderson and run to another nearby trailer for help. A resident of that trailer, another lodge employee, testified that S.M. burst into his trailer naked from the waist down, crying hysterically. He said that S.M.'s face was bruised, and blood was dripping from a cut on her lip. He said that when he saw her two hours earlier she had no injuries on her face. The man contacted the lodge manager and asked him to call the police.

An Idaho State patrol officer responded within minutes. He testified that S.M. was crying and upset, and that she had cuts on her lips, one of which was severe. The officer described the cuts as "very recent injuries" and "fresh" and that S.M. looked "brutalized" and "beat up." The officer also observed a cut to S.M.'s finger and said that the wound looked like a bite mark. He described it as "fresh" and still bleeding. The officer took photographs of S.M.'s face and finger, and these photos, which were admitted into evidence at trial, confirm his description of the injuries. The officer's photographs of the scene of the attack were also admitted at trial. One shows the victim's pants laying on the floor and turned inside out, as though they had been peeled off of her. Other pictures show the room in disarray, indicating a struggle. A week later, the officer returned to the lodge and took a picture of bruises that had appeared on S.M.'s chest. These photos also were placed in evidence.

S.M. was taken to a hospital, located some distance away, for examination. A nurse practitioner testified that S.M. was tearful and tired and said that she had been raped. The nurse practitioner confirmed numerous cuts on S.M.'s lips, which she described as "somewhat fresh," in part because there remained dried blood in the wounds, but offered that "as far as, like, giving an exact time that is not something I feel qualified to do." The nurse also confirmed an injury to S.M.'s finger, which she described as consistent with a bite mark. The nurse also described abrasions on S.M.'s buttocks and thighs and took several photographs of the injuries, which were also admitted into evidence at trial.

A detective with the Idaho County Sheriff's Department testified that shortly after the incident, and under authority of a search warrant, he transported Anderson to the hospital for a physical examination. The detective said that while awaiting the results of a rape kit

5

examination, Anderson admitted that he had sexual intercourse with S.M. but said that it was consensual.

Anderson testified at trial. He said that S.M. had shown him an injury to the inside of her mouth earlier in the evening and that she said she had sustained the injury when she fell while drunk. He contended that while in the bar, S.M. made sexual advances towards him. Anderson said that after S.M. departed, Black came to the bar and told Anderson that S.M. wanted to "get with" him, that he returned to the trailer with Black, and that when they entered S.M. was sitting on the couch wide awake. According to Anderson, Black then left, and Anderson and S.M. had consensual sex. Anderson contended that additional injuries to S.M.'s mouth occurred when his head accidently hit her mouth during sex. Anderson testified that after they had sex, S.M. started acting "weird" and said "they set you up." Anderson said that while he was in the bathroom, S.M. left. Shortly thereafter, Anderson contended, two lodge employees, one of them Jason Black, attacked him while hurling racial slurs.

Another lodge employee testified for the defense. This witness said that while he was in the bar with Anderson, Black came in and told Anderson that S.M. wanted to "hook up" with Anderson and that Black wanted to "introduce" the two. The witness also said that, immediately after the incident but before his arrest, Anderson had told him that a couple of lodge employees had "jumped" him.

It is apparent that while Black's testimony included some information that would have been favorable to the defense, as discussed above, it also included testimony unfavorable to the defense, particularly when contrasted with Anderson's trial testimony. Black said that S.M. told him to ask Anderson to "come talk to me." Black specifically denied that S.M. used any other words or that he told Anderson anything else. Black said that Anderson was intoxicated and that Black was concerned enough about Anderson's potential conduct that he said twice to Anderson, and loudly so that others in the bar could hear, "No means no." Black said that he drove Anderson back to the trailer and let him inside, and saw that S.M. was still asleep on the couch. Black further testified that when he left the trailer the first time, S.M. had no injuries to her face and that when he left the trailer the second time, after dropping Anderson off, the trailer was in order, but when he returned after the rape was reported, the room was in disarray with "stuff thrown down on the floor" and it "looked like a struggle" had occurred.

When all of Black's testimony is considered and compared with the trial evidence, it cannot reasonably be concluded that Black's testimony probably would have produced an acquittal. First and most importantly, the district court was incorrect in its assessment that the case hinged on the victim's credibility because there was a "paucity" of physical evidence. To the contrary, there was abundant physical evidence consisting of photographs of the cuts on S.M.'s lips, bruises and contusions to her face, a bite mark on her finger, bruising to her chest and abrasions on her back and thighs, as well as witness testimony concerning the same. There were also photos of the crime scene showing the room to be in disarray, consistent with a struggle having occurred there.

Second, S.M.'s behavior immediately following the incident, as described by third-party witnesses, was consistent with having been raped, not with consensual sex. The witness said that S.M. ran into his trailer crying hysterically and naked from the waist down, with blood still dripping from a cut on her lip and blood on her shirt.

Third, the district court erroneously viewed Black's testimony that S.M. had summoned Anderson to "come and see me" as crucial to the defense both in supporting Anderson's claim of consent and undermining S.M.'s somewhat contrary testimony and thus her credibility. The district court overlooked the fact that another defense witness (in addition to Anderson) had testified at trial to essentially the same point. The district court also reasoned that Black's testimony that S.M. was "intoxicated" would have further undermined her credibility by leading the jury to question her ability to remember the events. We disagree. S.M. admitted at trial that she had had five drinks that evening and had a "buzz" going.

Fourth, several components of Black's testimony would have seriously hurt the defense, because Black directly contradicted Anderson's trial testimony on several significant points, including whether S.M. was asleep or awake when the two men arrived. Black also was the only person other than S.M. who could establish that the trailer was in order when Anderson arrived, unlike after the attack when it was in disarray.

In short, although Black could have contradicted S.M.'s testimony that she was not drunk and could have supported Anderson's testimony that S.M. issued to him an invitation to come to her trailer, the conveyance of that invitation was already corroborated at trial by another witness from the bar; and nearly all of the remainder of Black's testimony would have supported the prosecution, especially his confirmation that S.M. had no prior injuries and that the trailer was in

good order immediately before Anderson's arrival.  Nothing in Black's testimony would have countered or explained away the strong physical evidence supporting S.M.'s claims.  When viewed in its entirety and analyzed in the context of other material trial evidence, this new testimony would not likely lead to a different jury verdict.

We therefore conclude that the district court abused its discretion by granting Anderson's motion for a new trial.  The district court's order is reversed and Anderson's judgment of conviction is reinstated.  The case is remanded to the district court for sentencing.

Judge GRATTON and Judge MELANSON **CONCUR.**