551 P.2d 972

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Eddie Lee DRAPEAU, Defendant-Appellant.**

**No. 11818.**

Supreme Court of Idaho.

June 25, 1976.

C. J. Hamilton, Coeur d'Alene, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., James F. Kile, Asst. Atty. Gen., Boise, for plaintiff-respondent.

SCOGGIN, District Judge, Retired.

Defendant-appellant Eddie Lee Drapeau (hereinafter appellant) was charged by in-

formation with the commission of the following four felony counts:

COUNT 1, second degree kidnapping (I.C. § 18–4501);

COUNT 2, assault with the intent to commit the infamous crime against nature (I.C. § 18–907);

COUNT 3, attempt to commit the infamous crime against nature (I.C. § 18–6605); and,

COUNT 4, assault with intent to commit murder. (I.C. § 18–4015).

The charges grew out of an incident alleged to have occurred in the early morning hours on January 24, 1974, at Lake Gulch, in Shoshone County, Idaho. A jury found appellant guilty of all the above charges, after which a judgment of conviction was entered. The district judge sentenced appellant to an indeterminate period of not to exceed 25 years on the first count of the information; for an indeterminate period of not to exceed 14 years on the second count; for an indeterminate period of not to exceed 2 – ½ years on the third count; and for an indeterminate period of not to exceed 2½ years on the fourth count. The sentences were ordered to be served consecutively.

At the time of sentencing, the district court considered and subsequently denied appellant's first motion for a new trial. The motion was filed on the grounds that error was committed in admitting into evidence, over objection, state exhibit 18. State exhibit 18 consisted of a written statement, bearing appellant's signature, which contradicted his alibi at trial that he was not in the area at the time and date the offenses occurred. The statement was made by appellant while he was incarcerat-

ed at the Shoshone County jail awaiting trial, to two of his cellmates, one of whom, John Bishop, reduced it to writing. The admissibility of the statement was first considered at a suppression hearing held prior to the commencement of the trial. Appellant's motion to suppress the statement was denied. The contents of the statement were introduced into evidence at trial for purpose of impeachment by the state while appellant was on the witness stand under cross-examination.[1]

Subsequent to the time a notice of appeal was filed with this tribunal, appellant filed with the district court a second motion for a new trial. This time appellant submitted that new evidence had been discovered which could not with reasonable diligence have been discovered and produced at trial. The "new" evidence consisted of two affidavits written by one of the cellmates, John Bishop, alleging that appellant was tricked and threatened into signing a statement he had not read which constituted state exhibit 18. The second motion for a new trial was denied.

Appellant brings this appeal from the judgment of conviction which was entered, and from the denial of his motions for a new trial. We affirm the judgment of conviction, but modify the sentences that were imposed so that appellant's incarceration on count three runs concurrently with count two and not consecutively. The rest of the sentence as imposed by the district judge is affirmed.

In his first assignment of error, appellant contends that the trial court wrongfully admitted state's exhibit 18 into evidence. He maintains that after he denied on the witness stand that the written statement

1. The state initially sought to introduce into evidence a document consisting of 12 handwritten pages as its exhibit 17. Pages 1 through 4, and 7 through part of 11 of this document were written in the handwriting of John Bishop, one of appellant's two cellmates at the Shoshone County jail. Pages 5 through 6 were written in the handwriting of the second cellmate, Mike Cooper. Pages 11–12 were in appellant's handwriting.

At a conference held outside the presence of the jury, it was determined that pages 1 through part of 7 contained potentially inflammatory material. The court thereupon ordered those pages stricken from the exhibit. A new exhibit, numbered state exhibit 18, consisting of pages 7 through 12 of what was formerly state exhibit 17 was offered into evidence in lieu of exhibit 17 and admitted by the trial court.

was true and correct, the burden shifted to the state to call one or both of the two parties who helped write the statement to testify as to its accuracy. Appellant submits that this failure to call one or both of the two cellmates prevented him from exercising his right of cross-examination. We find no merit to this argument.

 A defendant in a criminal proceeding who voluntarily testifies in his own behalf puts his credibility in issue. Thus,

> "[W]hen an accused takes the stand to testify in his own behalf, he is subject to impeachment the same as any other witness." *State v. Dunn,* 91 Idaho 870, 875, 434 P.2d 88, 93 (1967). *See also State v. Starry,* 96 Idaho 148, 525 P.2d 343 (1974); *State v. Griffith,* 94 Idaho 76, 481 P.2d 34 (1971); *State v. Storms,* 84 Idaho 372, 372 P.2d 748 (1962).

One recognized method of impeachment is by showing that on a prior occasion, the witness made a statement inconsistent with testimony he gave at trial. *State v. Bush,* 50 Idaho 166, 176, 295 P. 432, 435 (1930); I.R.C.P. 43(b)(8); McCormick on Evidence, § 33, and § 34 at 66–69 (2nd ed. 1972). In this state where a prior inconsistent statement of a witness is introduced at trial as impeaching evidence, it is admitted solely for the purpose of attacking the credibility of the witness, and not as substantive evidence of its truth.[2] *State v. Boyatt,* 59 Idaho 771, 87 P.2d 992 (1939).

 In order to impeach a witness by showing a prior inconsistent statement, a proper foundation must be laid. *State v. Mundell,* 66 Idaho 297, 158 P.2d 818 (1945); *Paurley v. Harris,* 77 Idaho 336, 292 P.2d 765 (1956); *Gayhart v. Schwabe,* 80 Idaho 354, 330 P.2d 327 (1958). The reasons for requiring a foundation are three-fold:

1. to avoid unfair surprise to the witness;
2. to save time, as an admission by the witness may make extrinsic proof unnecessary; and,
3. to give the witness in fairness to him, a chance to explain the discrepancy.

McCormick on Evidence, *supra,* § 37 at 72; *Gayhart v. Schwabe, supra.*

This foundation requirement applies not only to the ordinary witness but to a defendant in a criminal proceeding who chooses to testify as well.

 At the time of appellant's trial, a foundation for impeaching a witness through the use of prior inconsistent statements was laid by following the procedure as set forth in I.C. § 9–1210 which provided:

> "*Impeachment by showing inconsistent statements.*—A witness may also be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."[3]

A careful review of the record convinces us that a proper foundation for the admission of state exhibit 18 was established.

Appellant's testimony at trial consisted of an alibi placing him out of the area where the offense occurred at the time and date of the incident. He testified that he visited his sister in Gem, Idaho, until 2:00 p. m. on the afternoon of January 23, 1974, then drove to Coeur d'Alene, Idaho arriv-

---

2. There is recent authority to the contrary. *See* 4 Jones on Evidence, § 26:2 at 173 (6th ed. 1972).

3. The Idaho Rules of Civil Procedure came into effect on January 1, 1975, after appel-

lant's trial. I.R.C.P. 43(b)(8), is a verbatim restatement of I.C. § 9–1210. I.C.R. 26 makes this rule of civil procedure applicable to criminal proceedings.

ing at his grandfather's house at 5:00 p. m. in the evening. He next testified that from his grandfather's house he proceeded to his cousin's place also in Coeur d'Alene arriving there at approximately 6:30 p. m. He further testified that he left his cousin's place at 10:30 p. m., and drove to his aunt's home in Rathdrum, Idaho, arriving there at 11:00 p. m. Appellant went on to relate that he remained in Rathdrum until 3:00 a. m. in the morning of January 24th. After 3:00 a. m., appellant's itineration returned him to his grandfather's place in Coeur d'Alene, where he claimed to have spent the rest of the night. Appellant related that his travels kept him away from Shoshone County until January 27, 1974. His testimony on direct examination concluded with the following remarks:

"Q. You were not then in Shoshone County at any time on January 24th from at least midnight until or did you come back to Shoshone County at any time on the 24th?

A. No.

Q. Then if she [prosecutrix] said she saw you here, she is mistaken, isn't that correct?

A. Yes."

In an effort to impeach appellant's testimony as a witness, and thus discredit his alibi, the state on cross-examination attempted to introduce into evidence a written document consisting of several pieces of paper filled with handwriting and signed by appellant. Appellant was shown this document, and asked to inspect it before he was subjected to any questions concerning it. He was then questioned as to the circumstances under which the document was prepared. He related that the document was prepared in the early morning hours on or about April 10, 1974, in the presence of his two cellmates, John Bishop and Mike Cooper, in the Shoshone County jail. There was no testimony offered that the statements contained within the document were involuntarily coerced. Appellant was next asked who wrote the document. He responded that it was written in part by John Bishop and in part by himself. Appellant identified the part of the document written by John Bishop, and the part of the document bearing his writing. He admitted that he wrote in his own handwriting at the bottom of page 11 the following:

"I swear that I have read all 11 pages of this report. I told John [Bishop] and Mike Cooper what too [sic] write word for word because I am not so good at wirting [sic] and spelling. I wanted to trust Mike and John because I need hellp [sic] . . . ." [Signed] Eddy L. Drapeau.

However, despite his acknowledgement of the authenticity of this attestation, appellant testified that he did not in fact read the entire document before signing it, and that all matters contained in the statement were not true and correct. State exhibit 18 was admitted into evidence over appellant's objection.

There was no error committed in admitting this exhibit into evidence for the purpose of impeaching appellant's testimony at trial. A proper foundation was established prior to the time the exhibit was offered into evidence. Appellant was given a full opportunity to explain any inconsistency in the written statement with his testimony at trial. Whether appellant's testimony was impeached so as to render it unbelievable was for the jury to determine.

▋ Nor do we find the state's failure to call to testify one or both of appellant's cellmates at the Shoshone County jail to have denied appellant his right of cross-examination. It cannot be denied that the right to cross-examine adverse witnesses is an integral part of an accused's right to confrontation. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). As noted by Professor Wigmore:

" 'The main and essential purpose of confrontation is *to secure for the oppo-*

*nent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' " (Emphasis in original) J. Wigmore, Evidence § 1395 at 150 (Chadbourn rev. 1974).

Nor can it be gainsaid that the right to confrontation is a constitutional guaranteed right. As the United States Supreme Court commented in *Davis v. Alaska*:

> "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)" 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L. Ed.2d 347, 353 (1974).

 However, the right to confrontation does not require the prosecution to place on the witness stand any particular witness. As noted by the Wisconsin Supreme Court in *Gaertner v. State*:

> "While in a popular sense we say an accused has a right to face his accusers, we mean 'witnesses against him.' However, the right of confrontation does not require the state to produce any particular witness or give the accused the right to insist that the state call any particular witness. (Cites omitted) Not even the victim, or the accuser in the sense of the person swearing to the complaint which becomes the basis for the arrest, need be called as a witness. (Cites omitted) The constitutionally guaranteed right of confrontation applies in relation to the giving of testimony which is considered by the trier of the fact on the issue of the accused's guilt. Complaining witnesses or an informer or a decoy are not wit-

nesses within such constitutional requirement when they neither become witnesses in person at the trial nor otherwise give testimony to be used on the issue of guilt." 35 Wis.2d 159, 166, 150 N.W.2d 370, 374 (1967).

If appellant desired the presence of either cellmate it was incumbent upon him to make a timely request for such witnesses to be summoned. The failure of the prosecution to summon either cellmate did not deprive appellant of any confrontation right. *People v. Fisher*, 208 Cal.App.2d 78, 25 Cal.Rptr. 242 (1962); *People v. Jolliff*, 31 Ill.2d 462, 202 N.E.2d 506 (1964); *State ex rel. Byrd v. Bomar*, 214 Tenn. 476, 381 S.W.2d 280 (1964); *Flatt v. Commonwealth*, 468 S.W.2d 793 (Ky.Ct. of App. 1971); *Curtis v. Rives*, 75 U.S.App.D.C. 66, 123 F.2d 936 (1941); *Eberhart v. United States*, 262 F.2d 421 (9th Cir. 1958); *United States v. Polisi*, 416 F.2d 573 (2nd Cir. 1969).

In his second assignment of error, appellant contends that the trial court erred in denying his first motion for a new trial. The ground for appellant's first motion was that state's exhibit 18 was improperly admitted into evidence. Since we have decided that no error was committed in admitting this exhibit into evidence, there is no merit to this argument.

 In his third assignment of error, appellant maintains that error was committed in denying his second motion for a new trial. The basis for this second motion was the allegation that new evidence, i.e., the two affidavits of John Bishop, had come into appellant's counsel's possession almost a month after the jury rendered its verdict of guilty. Appellant argues that this evidence could not with reasonable diligence have been discovered and produced at trial, and furthermore, had it been available at the time of trial, it could have substantially increased his chance of acquittal on all charges. We cannot agree with these contentions.

I.C.R. 33 governs the granting of new trials in criminal proceedings.[4] It provides as follows:

> "*New Trial.*—The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If the trial was by court without a jury the court on motion of a defendant for new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based upon the ground of newly discovered evidence may be made only before or within two (2) years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other ground shall be made within ten (10) days after verdict or finding of guilt or within such further time as the court may fix during the ten (10) day period."

This rule was adopted almost verbatim from Federal Rule of Criminal Procedure 33. Professor Wright in his text on Federal Practice and Procedure commented:

> "Although defendants are tireless in seeking new trials on the ground of newly discovered evidence, motions on this ground are not favored by the courts and are viewed with great caution. No court wishes a defendant to remain in jail if he has discovered evidence showing that he is not guilty, but after a man has had his day in court, and has been fairly tried, there is a proper reluctance to give him a second trial.

> "Accordingly rather exacting standards have been developed by the courts for motions of this kind. A motion based on newly discovered evidence must disclose (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant." 2 C. Wright, Federal Practice and Procedure: Criminal § 557, at 515 (1969).

This analysis by Professor Wright is consistent with the approach taken by this Court in the past to motions for new trials tendered by defendants in criminal proceedings on the ground of newly discovered evidence. *State v. Davis,* 6 Idaho 159, 53 P. 678 (1898); *State v. Bond,* 12 Idaho 424, 86 P. 43 (1906); *State v. Cook,* 13 Idaho 45, 88 P. 240 (1907); *State v. Fleming,* 17 Idaho 471, 106 P. 305 (1910); *State v. Lumpkin,* 31 Idaho 175, 169 P. 939 (1917); *State v. Weise,* 75 Idaho 404, 273 P.2d 97 (1954); *State v. McConville,* 82 Idaho 47, 349 P.2d 114 (1960).

A review of the record convinces us that the trial court did not abuse its discretion in denying appellant's second motion for a new trial. The identity of John Bishop was known to appellant's counsel prior to the commencement of the trial. At the suppression hearing held the day before the trial began to consider the admissibility of state exhibit 18, the following exchange took place between appellant's counsel and the prosecuting attorney:

"MR. HAMILTON (appellant's attorney): For the purpose of shortening that [admissibility of state exhibit 18] do you intend to have your two parties here who were supposed to have wrote that down?

"MR. MAGNUSON (prosecuting attorney): One of them is here.

---

4. I.C.R. 33 recognizes the traditional principle that a trial judge has broad powers to grant a new trial if he concludes for any reason that the trial has resulted in a miscarriage of justice. Under this rule a trial judge is no longer limited to granting a new trial to where one of the grounds set forth in I.C. § 19–2406 has been met. As disclosed in the notes of the compilers of the criminal rules, I.C.R. 33 ". . . is much more direct and more conducive to allowing all matters which may have affected the defendant's right to a fair trial to be presented upon a motion."

"MR. HAMILTON: Which one?

"MR. MAGNUSON: Bishop. I don't know that I am under any obligation to call him, however."

Furthermore, it is evident from appellant's counsel's questioning of his client at the suppression hearing, that he was aware of who John Bishop was, and his role in the preparation of state exhibit 18.

We see no reason, nor has counsel for appellant advanced one, why John Bishop could not have been called as a witness to testify in appellant's behalf at trial.[5]

"A new trial should never be granted on the ground of newly-discovered evidence when such evidence is merely cumulative, nor when the alleged newly-discovered evidence was easily within the reach of the defendant, and could, with reasonable diligence, have been produced at the trial. To grant a new trial on such grounds would not be subservient to the public good, but would, on the other hand, encourage a careless and loose presentation by the defendant of his defense." *State v. Davis, supra,* 6 Idaho at 174, 53 P. at 682.

In addition, even if this allegedly newly discovered evidence was introduced at trial, we are not convinced that a different verdict would have been reached, since the evidence in favor of conviction was strong.

For a new trial to be warranted upon the ground of newly discovered evidence,

". . . it must appear from the affidavits presented that the new evidence is not cumulative merely, that it is such as to render a different verdict reasonably probable upon a retrial, and that the evidence could not with reasonable diligence have been discovered and produced at the trial." *State v. Fleming, supra,* 17 Idaho at 505, 106 P. at 318.

Because the evidence in issue could have been secured with a reasonable amount of diligent pre-trial effort, and since the allegedly newly discovered evidence would have rendered a different verdict unlikely, we cannot say that a new trial was warranted under the circumstances.[6]

In his final assignment of error, appellant asserts that in view of his background of no prior felony convictions, the sentences imposed upon were excessive and the result of passion, and therefore should be reduced. With this assertion we cannot agree.

 The length of the sentence imposed upon a convicted defendant in a criminal proceeding is normally left to the discretion of the trial court. Where the sentence imposed is within the limits prescribed by statute, it will not ordinarily be considered an abuse of discretion. *State v. Hawk,* 97 Idaho 1, 539 P.2d 553

---

5. Even if appellant's counsel first became aware of who John Bishop was at the suppression hearing, and needed additional time to interview him, the record does not reveal that any motion was made for a continuance.

6. We might note in passing that subsequent to the time this appeal was taken, by stipulation of counsel for both the state and appellant, the record before this Court was augmented to include an affidavit of Mike Cooper dated April 15, 1975, and one of John Bishop dated May 5, 1975. In his affidavit, Cooper explained that the statement contained within exhibit 18 was taken down at appellant's request; that appellant was not tricked into making it; that appellant read the statement, and had it read to him by both Bishop and himself; and that in his opinion appellant understood it. In his affidavit, Bishop contradicted much of his two earlier affidavits, stating that appellant was never threatened into making the statements, but that he made this allegation because he was afraid that unless he helped appellant out his life was in danger. Bishop also noted:

"The statement we took from Eddy is what he told us. I can't swear that he read it all after we were finished because while he was reading most of it, I got up for water or something. I can't really remember what it was, but when I got back to the bunk, Eddy was signing that he read it."

(1975); *State v. Mooneyham,* 96 Idaho 145, 525 P.2d 340 (1974); *State v. Ogata,* 95 Idaho 309, 508 P.2d 141 (1973); *State v. Dunn, supra.* Appellant was sentenced to the maximum term of confinement on each of the counts for which he was convicted. Under the facts of this case we do not find this to have been an abuse of the trial court's sentencing discretion.

The crimes for which appellant was convicted involved the use of force and violence. The victim of the offenses was forced off the road in the early morning hours while driving home from work, abducted at gunpoint from her car, driven against her will to a secluded spot and told to remove her clothes. When she refused to comply with the directive to disrobe, she was struck on the side of her head with a gun, grabbed by her hair, and pushed down between appellant's legs where she felt her aggressor's sexual organ on her face. While trying to escape she was shot twice, once near her hip, and a second time in the head. As a result of her head wounds the victim is partially paralyzed today.

In addition to the particularly brutal nature of the crimes, we might also note that appellant's record prior to the time of trial was far from being exemplary. The pre-sentence investigation report disclosed that appellant had previous trouble with the law. On at least two occasions he was fined and incarcerated in county jails. In light of all these circumstances, the sentences imposed will be affirmed with one minor modification. Since counts 2 and 3 of the information arose out of the same act, the sentences imposed on these two counts are ordered to be served concurrently. The sentences on counts 1, 2 and 4 will be served consecutively.

Affirmed as modified.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.