Justice pro tem TROUT
dissents as follows:
I concur in all of the Court’s opinion with the exception of the part analyzing the denial of Stevens’ motion for a new trial based on the discovery of evidence related to the removal of Casey’s eyes. Because I believe this meets the test for newly discovered evidence and would have been likely to produce an acquittal, I believe the motion for new trial should have been granted and I, therefore, respectfully dissent.
The Court’s opinion correctly sets forth the test for granting a new trial based upon the discovery of new evidence. See State v. Drapeau, 97 Idaho 685, 551 P.2d 972 (1976). It is the fourth factor, whether “the failure to learn of the evidence was not due to a lack of diligence on the part of the defendant,” Drapeau, 97 Idaho at 691, 551 P.2d at 978, which is applied incorrectly. The Court concludes that because the Mortuary Embalming Report was available prior to trial, the defendant and his attorneys were not diligent in locating it. This, in effect, completely eliminates the analysis of reasonable diligence or due diligence. In the Court’s view, if a piece of evidence was in existence prior to trial, that ends the inquiry. That is not a correct analysis of whether the defendant acted with due diligence in learning of the pertinent evidence.
In testimony at the first trial in this case, the State presented the pathologist from St. Luke’s Hospital, Ronald Slaughter, who performed the autopsy on the victim, Casey Whiteside. Dr. Slaughter detailed the steps he took in performing the autopsy, including mentioning pictures of the body and face of the victim taken by the coroner while Dr. Slaughter was doing the autopsy. Specifically, related to Casey’s eyes, Dr. Slaughter responded to defense counsel’s questions as follows:
Q. Doctor, did you remove Casey’s eyes?
A. I did.
Q. For what purpose?
*154 A. The coroner had me remove them and keep them until they tell [sic] me what to do with them later.
Q. Did you notice or did you inspect' those eyes for retinal hernia?
A. Retinal hemorrhages, no, I’m not an ophthalmology pathologist who does only eyes. So I just put them in formalin which is fixative and keeps them preserved and put them in that until I was told what to do with them.
A few minutes later, in response to a question on redirect examination from the State, Dr. Slaughter indicated that he later sent the eyes to be examined by a forensic ophthalmologist in California [Dr. Brooks Crawford].
Eight years later, at the hearing on the defendant’s motion for a new trial, Dr. Slaughter testified that he couldn’t remember whether he removed the eyes during the autopsy, or at some time later. Thus, his positive and unequivocal testimony at trial was apparently completely wrong. The only evidence that Casey’s eyes were not removed during the autopsy comes from the Mortuary Embalming Report, which has a hand written notation in the “description of subject” section on the line following the word “eyes” indicating they were “brown.” In denying the motion for new trial, the district court stated there was “no showing that the embalming report could not have been obtained prior to trial with the exercise of due diligence.” The Court upholds this decision, again based upon a conclusion that because the embalming report was in existence prior to trial, it could have been found in the exercise of due diligence. That holding disregards the question of whether diligent counsel would have had any reason to look for it.
In Drapeau, the Court quoted from State v. Davis, 6 Idaho 159, 53 P. 678 (1898) as follows:
A new trial should never be granted on the ground of newly-discovered evidence when such evidence is merely cumulative, nor when the alleged newly-discovered evidence was easily within the reach of the defendant, and could, with reasonable diligence, have been produced at the trial. To grant a new trial on such grounds would not be subservient to the public good, but would, on the other hand, encourage a careless and loose presentation by the defendant of his defense.
In U.S. v. Lawhorne, 29 F.Supp.2d 292 (E.D.Va.1998), the district court held:
Second, it is necessary to determine whether there has been diligence on the part of the defendant. “Diligence” means ordinary diligence, not the highest degree thereof; and diligence usually is determined by taking into account the composite knowledge of the defendant and his counsel.
29 F.Supp.2d at 305.
Ordinary or reasonable diligence certainly contains some notion that defense counsel must have some reason to go looking for the evidence in the exercise of diligence. In the case at bar, there was absolutely no reason for defense counsel to search out an embalming report with one obscure reference to the color of Casey’s eyes, given Dr. Slaughter’s specific, but wrong, testimony that he recalled removing the eyes during the autopsy, that he placed them in formalin and waited direction from the coroner on what to do with them. Admittedly, the condition of Casey’s eyes was a critical piece of evidence relied upon by the State as proof that Casey’s head had been violently shaken prior to his death. Neither the State, nor its witness, Dr. Slaughter, gave any indication but that the eyes were removed during the autopsy and held until they could be sent to an expert ophthalmologist. Frankly, even to a lay person, it seems extraordinary that body parts would be examined after they had been embalmed and that no one would think to comment on that. It certainly does not mean that defense counsel lacked reasonable diligence when he accepted Dr. Slaughter’s clear statements about how the autopsy was conducted.
The State’s theory of the case was that Casey had been violently shaken by Stevens and that the retinal hemorrhaging in Casey’s eyes was strong evidence of that. Indeed, Dr. Brooks Crawford, the ophthalmologist to whom Casey’s eyes were sent for examination, testified at trial that “I can think of no *155 other way to explain the findings, this constellation of findings that we have here, except for violent shaking. There’s no other way to explain it.” Thus, evidence that embalming the eyes may have caused the hemorrhaging is critical evidence and could very well have caused the jury to question the State’s theory and produced an acquittal. Because I don’t think defense counsel lacked reasonable diligence in looking for an embalming report, I respectfully dissent from the Court’s opinion.