**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43324**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 656** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed:  August 24, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ALFRED FAIRBANKS,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County.  Hon. John R. Stegner, District Judge.

Judgment of conviction, <u>affirmed</u>; order denying motion for new trial, <u>affirmed</u>.

Rob S. Lewis, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Alfred Fairbanks appeals from his judgment of conviction for four counts of provider fraud.  He challenges both the sufficiency of the evidence supporting his conviction as well as the district court's denial of his motion for a new trial.  For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Fairbanks is a dentist located in Pullman, Washington.  The Office of the Idaho Attorney General's Medicaid Fraud Control Unit began investigating Fairbanks after a former patient's mother complained that Fairbanks had submitted Medicaid claims for dental work that was never performed on her son.  As part of its investigation, the State retained a dentist, Dr. Coppess, to examine numerous Idaho Medicaid patients of Fairbanks's.  Dr. Coppess reviewed Fairbanks's medical charts for those patients and conducted in-person dental examinations of each person.

1

The in-person examinations included digital face photographs, oral examinations, and digital radiographs (x-rays). Dr. Coppess's examinations revealed a number of discrepancies between the procedures for which Fairbanks billed Medicaid and the procedures that were actually performed on some of his patients.

The State initially charged Fairbanks with provider fraud, computer crime, and grand theft. After a preliminary hearing and a motion to dismiss, the State proceeded to trial on four felony counts of provider fraud, Idaho Code § 56-227A. Counts 1, 2, and 3 alleged that on three different occasions Fairbanks billed Medicaid for, but did not perform, composite fillings on five of patient A.S.'s teeth. Count 4 alleged that Fairbanks billed Medicaid for a composite filling on one of patient J.G.'s teeth without actually providing a filling for that tooth.

During the jury trial, the State called a number of witnesses to testify. One of those witnesses was Dr. Coppess. As a dentist with over thirty-five years of experience, Dr. Coppess testified generally regarding the process of providing a composite filling and how both x-ray technology and oral examination using a special tool called an "explorer" can assist a dentist in tactilely detecting fillings. Dr. Coppess also testified specifically regarding his examinations of A.S. and J.G. as part of the State's investigation. He stated that his examinations revealed fillings in other teeth of A.S. and J.G., but that there was no evidence showing that the teeth at issue in A.S. and J.G. were ever drilled or filled. The State also presented testimony from other witnesses regarding the x-ray equipment and technology used in Dr. Coppess's examinations of A.S. and J.G.

In his defense, Fairbanks called dentist Dr. Staley as his only witness. Dr. Staley testified that although he did not examine A.S. or J.G., he reviewed the same x-ray images used by Dr. Coppess, as well as the patients' charts and previous x-rays taken by Fairbanks. He stated that several of the x-ray images taken for Dr. Coppess's examination were of poor quality and, because of their poor quality, he was unable to ascertain with certainty the presence or absence of fillings in the particular teeth at issue. He also testified that certain types of materials used in composite fillings, notably flowable composite resin, can be difficult to see on an x-ray.

The jury found Fairbanks guilty on all four counts of provider fraud. Nine days after his conviction, Fairbanks asked one of his patients living in the same town as A.S. to reach out to A.S. on his behalf. Through the patient, Fairbanks offered A.S. $300 in exchange for traveling to Pullman and allowing Fairbanks to examine his teeth. At the examination that followed,

Fairbanks took a different type of x-ray image than that used by Dr. Coppess. He also took close-up photographs of the teeth at issue. Fairbanks then filed a motion for a new trial on the basis of newly discovered evidence. The court held a hearing on the motion.

In support of his motion, Fairbanks testified that the new x-rays and photographs revealed that composite fillings were visible in the teeth at issue. Additionally, Fairbanks again presented the testimony of his expert witness, Dr. Staley, to support his contention that the new images showed the presence of composite fillings. Fairbanks's trial attorney also testified regarding her efforts to locate A.S. prior to trial, and counsel's belief that she could not compel A.S. to cooperate with an examination without it being considered tampering with a witness.

The district court denied Fairbanks's motion for a new trial on the grounds that Fairbanks had not met any of the four requirements of the *Drapeau*[1] test. The district court entered its judgment of conviction and sentences and then granted the parties' stipulation to stay the execution of the sentences pending appeal. Fairbanks now timely appeals.

## II.

## ANALYSIS

Fairbanks raises two issues on appeal. First, he argues the jury had insufficient evidence to find him guilty of provider fraud. Second, he argues the district court abused its discretion in denying his motion for a new trial. We address each issue in turn.

### A. Sufficiency of the Evidence

Fairbanks's first argument on appeal is that the jury had insufficient evidence to find him guilty of provider fraud. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the

---

[1] *See State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976).

evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

During Fairbanks's trial, a witness for the State testified as to the Medicaid billing codes submitted by Fairbanks to the Medicaid office. The witness indicated that Fairbanks billed and was paid for placing composite fillings in the teeth at issue. The State then presented the testimonial evidence of Dr. Coppess who attested that there was no evidence of fillings ever having been placed into those teeth. Dr. Coppess, the only testifying dentist that had ever examined A.S. and J.G., informed the jury of his observations based upon his examination of those patients. He stated that while examining A.S., he tactilely checked for fillings using an explorer. He also examined six x-ray images that were taken the same day. He stated that although he observed some composite fillings on A.S.'s other teeth, he did not observe any fillings on the five teeth at issue. Dr. Coppess also testified that during his examination of J.G., he again performed an oral examination with an explorer and examined x-rays. He stated that he did not observe any indication that a filling was ever performed on J.G.'s tooth at issue. The State also presented witness testimony regarding the process used to obtain the x-ray images utilized by Dr. Coppess as well as the reliability of the x-ray technology used to be able to visualize the presence of composite fillings in teeth.

Fairbanks nonetheless argues the evidence presented by the State was insufficient for a variety of reasons. Fairbanks first suggests the evidence was insufficient because Dr. Coppess has not practiced dentistry in quite some time and is unknowledgeable about current dental practices and procedures. He next suggests Dr. Coppess's opinion was not based on all of the available evidence because he did not examine Fairbanks's patient intake questionnaires and old x-rays. Fairbanks finally suggests Dr. Coppess relied on inferior x-ray technology to conclude Fairbanks did not perform the fillings at issue. At the core of each of these arguments is an implication that Dr. Coppess's testimony was not credible. Each contention invites this Court to substitute its view regarding Dr. Coppess's credibility for that of the jury. It is not the province of this Court to reweigh the evidence or reassess the credibility of witnesses. Based on the record before us, there was substantial evidence upon which the jury could have found Fairbanks guilty of the crime of provider fraud beyond a reasonable doubt.

4

**B.     Motion for New Trial**

Fairbanks's next argument is that the district court abused its discretion by denying his motion for a new trial.  A decision on a motion for new trial is reviewed under an abuse of discretion standard.  *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995).  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason.  *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).  Whether a trial court properly applied a statutory provision to the facts of a particular case is a question of law over which we exercise free review.  *State v. Horn*, 124 Idaho 849, 850, 865 P.2d 176, 177 (Ct. App. 1993).  A motion for a new trial based on newly discovered evidence must disclose:  (1) that the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant.  *State v. Drapeau*, 97 Idaho 685, 691, 551 P. 972, 978 (1976).  If the purported new evidence does not meet each of the *Drapeau* requirements, the district court should not grant a motion for a new trial.  *State v. Ames*, 112 Idaho 144, 146, 730 P.2d 1064, 1066 (Ct. App. 1986).

The court ultimately found that Fairbanks did not meet any of the four *Drapeau* requirements and denied his motion.  Specifically regarding the first and fourth *Drapeau* requirements, the court found that Fairbanks had failed to meet his burden of proof on those requirements because his minimal efforts to locate A.S. showed a lack of diligence.[2]

The first and fourth requirements of the *Drapeau* test are somewhat intertwined.  Each requirement depends largely upon the court's determination as to whether a party's efforts to discover evidence prior to trial were diligent.  Under the first *Drapeau* requirement, the proponent of a new trial bears the burden of showing that the newly discovered evidence was not only unknown to the defendant at the time of trial, but "could not have been discovered by the

---

[2]     Because the newly discovered evidence pertained only to A.S., the court considered the motion for a new trial as applying only to Counts 1, 2, and 3.  The court did not focus its inquiry on Fairbanks's efforts to reach J.G.

5

exercise of due diligence." *Ames*, 112 Idaho at 147, 730 P.2d at 1067. Under the fourth *Drapeau* requirement, the proponent must show that his or her failure to obtain the newly discovered evidence prior to trial was not due to a lack of diligence. *Id.* at 148, 730 P.2d at 1068. The question of diligence is one of fact and will not be overturned absent a showing that the finding is clearly erroneous. *Id.*

In *Ames*, the defendant filed a motion for a new trial on the grounds that only *after* trial was he able to locate an alibi witness that could testify to his whereabouts at the time of the charged crime. *Id.* at 147, 730 P.2d at 1067. Prior to trial, neither the defendant's counsel nor the prosecutors had been able to locate the witness because she had taken a new job traveling to different parts of the country and left no forwarding address. *Id.* at 148, 730 P.2d at 1068. Nothing in the record indicated that any amount of diligence would have revealed the witness's whereabouts. *Id.* at 147, 730 P.2d at 1067. We held that evidence can be deemed newly discovered only "[i]f the witness *cannot* be contacted until after trial." *Id.* (emphasis added).

Here, in finding a lack of diligence, the court considered testimony from Fairbanks's trial counsel regarding the efforts taken to locate A.S. prior to trial. At the motion hearing, counsel testified that in attempting to locate A.S., she called the telephone number located on his patient chart, but it had been disconnected. She also testified to searching the Internet unsuccessfully for additional telephone contact information. She admitted to considering the telephone the superior method for contacting A.S., as it was her belief that he "wouldn't respond to something like a letter from a Boise attorney." Notably absent from her efforts was any attempt to contact A.S. by mail or in person at the address listed on his patient chart. The court found it significant that after the trial concluded, the process server hired by Fairbanks was able to locate and serve A.S. within hours of being provided with the very address listed in Fairbanks's patient chart. The district court also opined that counsel's minimal efforts to locate A.S. prior to trial had every indication of being a strategic decision.

We agree with the court's finding that Fairbanks's efforts to locate A.S. for purposes of obtaining an examination were not diligent. Prior to trial, Fairbanks had access to A.S.'s patient chart which listed his address and telephone number. Fairbanks used the telephone number listed on that chart to attempt to contact A.S. When Fairbanks was unable to reach A.S. via telephone, he made no effort to locate him at the very address at which A.S. was eventually served. A.S. testified at the motion hearing that he had continually lived at that same address for

many years. This situation is markedly different from that in *Ames* where the witness *could not* be contacted. Fairbanks knew, or should have known based on the information in his possession prior to trial, where to locate A.S. Failing to utilize this information evidences a lack of diligence in locating A.S. Moreover, to the extent that Fairbanks's counsel was concerned that an attempt to contact A.S. would amount to witness tampering, we are not persuaded by this argument. While an attempt to compel participation in an examination by Fairbanks would have been inappropriate, nothing precluded Fairbanks from requesting A.S.'s voluntary participation, which is what eventually transpired after conviction. Thus, the district court did not err in finding that Fairbanks failed to meet his burden of showing the purported newly discovered evidence could not have been discovered by the exercise of due diligence either before or at the time of trial.

Because we agree with the court's assessment regarding Fairbanks's lack of diligence, we need not address the other two *Drapeau* requirements. The district court applied the correct legal principles and did not abuse its discretion by determining that Fairbanks did not exercise diligence in attempting to locate the evidence at or prior to trial. Thus, we find no error in the denial of the motion for a new trial.

### III.
### CONCLUSION

The evidence in this case was sufficient to support the jury's conviction of Fairbanks for four counts of provider fraud. Additionally, the district court did not abuse its discretion in denying Fairbanks's motion for a new trial based upon newly discovered evidence because Fairbanks's efforts to locate the evidence prior to trial were not diligent. Accordingly, we affirm Fairbanks's judgment of conviction for provider fraud.

Judge GRATTON and Judge HUSKEY **CONCUR**.