# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46013

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, August 2019 Term |
| | ) | |
| v. | ) | Opinion filed: October 25, 2019 |
| | ) | |
| JACOB S. DAVIS, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Payette County. Susan E. Wiebe, District Judge.

The judgment of the district court is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Ben P. McGreevy argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

---

MOELLER, Justice

## I.    NATURE OF THE CASE

Jacob S. Davis appeals from the Payette County district court's denial of his motion for a new trial. Following his convictions in two separate cases, and subsequent appeals, Davis moved for a new trial in both cases based on two grounds: (1) the verdicts were contrary to the law or the evidence and (2) newly discovered evidence. Under the newly discovered evidence claim, Davis asserted that the State failed to preserve exculpatory evidence on Facebook, thereby allowing the evidence to be destroyed. The district court denied both motions. On appeal, Davis contends that the district court abused its discretion by not applying the proper standard to his newly discovered evidence claim, and that application of the proper standard would have yielded the opposite result. Davis further argues that as a result of this abuse of discretion, his right to a fair trial was violated. For the reasons stated below, we affirm the judgment of conviction.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Due to his prior sex offense conviction, Davis was required to register as a sex offender.[1] In 2013, when an individual came forward with allegations that Davis had committed a theft, officers from the Payette Police Department learned that Davis was residing somewhere other than his registered address. Additionally, the individual informed the officers that Davis was living with two minor boys. After the officers investigated the matter further, they discovered that Davis was sexually abusing both boys. Further investigation revealed that Davis was in possession of sexually exploitative materials depicting both boys and at least one other minor.

In November 2014, the State charged Davis with one felony count of "sexual offender registration—failure to notify of change of address or name," in violation of I.C. §§ 18-8304(1)(a), -8309(1)-(3), -8311(1), and gave notice of the applicability of a persistent violator sentencing enhancement, I.C. § 19-2514 (the registration case). The jury found Davis guilty of failing to update his sexual offender registration, and Davis subsequently admitted to the persistent violator sentencing enhancement alleged in the information. Upon Davis's request, the court postponed sentencing in anticipation of additional pending charges.

In December 2014, the State charged Davis with multiple felony counts: four counts of lewd conduct with a child under sixteen, I.C. § 18-1508, four counts of sexual battery of a minor child sixteen or seventeen years of age, I.C. § 18-1508A, seven counts of possession of sexually exploitative material for other than a commercial purpose, I.C. §§ 18-1507,-1507A, and a repeat sexual offender sentencing enhancement, I.C. § 19-2520G (the sexual misconduct case). The jury found Davis guilty of two counts of lewd conduct, two counts of sexual battery, and one count of possession of sexually exploitative materials, and Davis subsequently admitted to the repeat sexual offender portion of the information.

Davis was sentenced in November 2015 in both cases. In the registration case, the district court sentenced Davis to forty-five years, with twenty years fixed and twenty-five years indeterminate, to run concurrently with the sentences in the sexual misconduct case. In the sexual misconduct case, the district court sentenced Davis to four consecutive thirty-five year sentences, each with fifteen years fixed and twenty years indeterminate, and one fifteen-year fixed sentence.

---

[1] Davis was required to register as a sex offender because he pleaded guilty to the offense of Possession of Sexually Exploitative Material in violation of I.C. § 18-1507A in 2003.

Davis timely appealed both cases, alleging that various errors occurred during his trials and sentencing. In an unpublished opinion,[2] the Idaho Court of Appeals affirmed the district court.

After a remittitur was issued in both cases, Davis filed a number of *pro se* motions, including motions for a new trial in both cases. The specific grounds asserted for a new trial were (1) the verdict was contrary to the law or the evidence and (2) newly discovered evidence. In support of his newly discovered evidence claim, Davis alleged, in part, that the State prevented the use of exculpatory photographic evidence on "several Facebook accounts, by destroying and/or erasing [posted photographs] without affording the defendant a chance to review [them]." One example was "the posting of a camping trip which occurred over the weekend when the images of [the minors] were created." This evidence, Davis asserted, "would have proved that I was not at the Payette residence at the time these images were created (in addition to [the minors]) and that someone had manipulated the computers [sic] system settings." Davis also alleged that "a CONFIDENTIAL letter between defendant and counsel discussing trial strategies, which defendant mailed to counsel through the County Jail, . . . was in the custody of the plaintiffs LEAD investigating agents [sic] files on the defendant." Davis asserted that this letter "was a CONFIDENTIAL correspondence that I wrote [o]n . . . October [26], 2013, to my counsel at the time . . . which is NEWLY discovered evidence showing that the State and its investigating agents/agencies deliberately and affirmatively took steps to obtain privileged information about trial strategies I discussed with counsel."

The district court denied the motions. Specific to Davis's newly discovered evidence claim, the court found that, "[s]ince the information is unknown, the Court cannot find that the evidence is material or that it would have probably produced an acquittal." Davis timely appeals.

### III.    STANDARD OF REVIEW

"The denial of a motion for new trial is reviewed for an abuse of discretion." *State v. Stevens*, 146 Idaho 139, 144, 191 P.3d 217, 222 (2008). This Court applies a four-part test when evaluating discretionary decisions of the lower court: whether the lower court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Godwin*, 164 Idaho 903, 918, 436

---

[2] *State v. Davis*, No. 43818, , at *4 (Idaho Ct. App. Apr. 27, 2017).

3

P.3d 1252, 1267 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

Additionally, constitutional claims are reviewed by this Court *de novo*. *State v. Easley*, 156 Idaho 214, 218, 322 P.3d 296, 300 (2014).

## IV. ANALYSIS

On appeal, Davis contends that the district court abused its discretion when it denied his motion for a new trial because it incorrectly applied the standard from *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976) (which applies to motions for a new trial based on newly discovered evidence) instead of the standard from *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988) (which applies to the destruction or loss of potentially exculpatory evidence). The State contends that the district court correctly reviewed Davis's claim under *Drapeau* because Davis alleged that a *witness* destroyed evidence, not the State. The State also contends that Davis's argument similarly fails under *Youngblood* because Davis has not set forth a *prima facie* claim that his due process rights were violated by the government's alleged role in the destruction of potentially exculpatory evidence.

### A. The district court did not err in analyzing Davis's newly discovered evidence claim under *Drapeau*.

Davis contends that the district court abused its discretion when it reviewed his destruction of evidence claim, a claim based on prosecutorial misconduct, under the *Drapeau* standard rather than the *Youngblood* standard. According to Davis, although he raised his prosecutorial misconduct claim under Idaho Code section 19-2406(7), which necessarily invokes the *Drapeau* standard, the court should have realized it was in fact a due process *Youngblood* claim and applied that standard instead.

On a defendant's motion for a new trial in a criminal case, the lower court may grant a new trial "on any ground permitted by statute." I.C.R. 34(a). Section 19-2406 specifies the permissible grounds for a new trial, including the grounds of "newly-discovered evidence." I.C. § 19-2406(7). "[T]he grounds enumerated in the statute are the exclusive grounds upon which a defendant's motion for new trial may be granted." *State v. Lankford*, 162 Idaho 477, 493, 399 P.3d 804, 820 (2017). This Court has repeatedly stated that prosecutorial misconduct, such as the destruction of exculpatory evidence, "is not a basis for granting a motion for new trial under

4

Idaho Code section 19-2406."[3] *Id.*; *see also State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007); *State v. Page*, 135 Idaho 214, 223, 16 P.3d 890, 899 (2000); *State v. Jones*, 127 Idaho 478, 481, 903 P.2d 67, 70 (1995). When a claim is brought under section 19-2406(7), Idaho courts use the standard set forth in *Drapeau* to assess whether a new trial should be granted based on the newly discovered evidence. This standard requires a showing

> (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was not due to a lack of diligence on the part of the defendant.

*Drapeau*, 97 Idaho at 691, 551 P.2d at 978.[4]

Here, Davis moved for a new trial based on newly discovered evidence under section 19-2406(7), alleging that the State failed to preserve exculpatory evidence on Facebook. As a result, the State was responsible for the destruction of the evidence and he was entitled to a new trial. Davis cited several cases, including *Brady*,[5] *Youngblood*, and *Drapeau* to support his argument that he is entitled to a new trial. Davis asserted that under the *Drapeau* standard, "he is entitled to a new trial in the interest of justice." The district court denied Davis's motion because it "cannot find that the evidence is material or that it would have probably produced an acquittal" as the information is unknown.

The district court analyzed Davis's motion for a new trial under the *Drapeau* standard because it was brought under section 19-2406(7) and *Drapeau* was explicitly invoked by Davis in his motion. Accordingly, the district court did not err in that regard because *Drapeau* provides the appropriate test for analyzing a section 19-2406(7) claim. Davis was apparently under the misimpression that destroyed evidence is a subset of newly discovered evidence under section 19-2406. It is not. Davis now argues that, although the district court correctly concluded he is not entitled to a new trial under section 19-2406, the court should have parsed his motion, ignored all references to *Drapeau*, and applied the correct legal theory *sua sponte*. That is, Davis suggests

---

[3] That is not to say that prosecutorial misconduct is ever condoned by this Court. However, as will be discussed later in this Opinion, the issue in this case—the alleged loss or destruction of exculpatory evidence by the State due to prosecutorial misconduct—is properly reviewed on direct appeal. *Id.* at 493–94, 399 P.3d at 820–21.

[4] The only alternative test utilized by this Court is the *Scroggins* test, a test implemented only when a material witness recants testimony. *See State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985). The facts of this appeal present no such question. Thus, while assessing a motion for a new trial under section 19-2406(7), the district court could only appropriately assess the claim brought before it under the *Drapeau* test.

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

that the court should have construed the basis of his motion as one of prosecutorial misconduct under *Youngblood*.

It is well established that "[*p*]*ro se* litigants are held to the same standards and rules as those represented by an attorney." *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009). The substance of Davis's entire motion directs the district court to apply the *Drapeau* standard. Davis not only began his motion with a citation to section 19-2406, but he also specifically asked the court to grant him a new trial based on the standard set forth in *Drapeau*. Moreover, Davis repeatedly described the Facebook evidence as "new evidence" and "newly discovered," further indicating his reliance on the standard for newly discovered evidence. Thus, the district court reasonably read the substance of the motion and applied the proper standard. Nevertheless, because Davis also cited to *Youngblood* in his motion for a new trial, and arguably asserted grounds that could fit within a *Youngblood* claim, we will consider his argument on appeal. *See Lankford*, 162 Idaho at 493–94, 399 P.3d at 820–21.

## B. Even reviewing Davis's motion as one of prosecutorial misconduct under *Youngblood*, it still fails.

Davis correctly asserts on appeal that there is a substantive distinction between a *Youngblood* claim and a claim based on newly discovered evidence under section 19-2406(7). This is because *Youngblood* claims are derived from prosecutorial misconduct, "whereas *Drapeau* claims deal with evidence that was unknown to the defendant not due to prosecutorial misconduct." *Lankford*, 162 Idaho at 503, 399 P.3d at 830. In *Lankford*, we reviewed a claim of prosecutorial misconduct that had been incorrectly brought under section 19-2406(7) on direct appeal in order to determine whether the judgment should be vacated and a new trial granted. 162 Idaho at 493–94, 399 P.3d at 820–21. In that case, the defendant brought a motion for a new trial under section 19-2406(7), alleging that the prosecutor "suppressed exculpatory evidence in violation of *Brady* and *Napue*.[6]" *Id.* at 493, 399 P.3d at 820. The State argued that prosecutorial misconduct claims could not be raised under section 19-2406. *Id.* We agreed with the State, but nevertheless explained our willingness to review such claims on direct appeal. *Id.* at 493–94, 399 P.3d at 820–21. Although our decision in *Lankford* specifically dealt with *Brady* and *Napue* based claims of prosecutorial misconduct, rather than a *Youngblood* based claim, our decision was in regards to claims of prosecutorial misconduct in general, not a subset

---

[6] *Napue v. Illinois*, 360 U.S. 264 (1959).

of it. Therefore, as this is a direct appeal from the district court's order denying Davis's motion for a new trial, we will consider his claim of prosecutorial misconduct on this narrow basis.

It is a well-established constitutional tenet that the State has a duty to disclose to the defense exculpatory evidence known to the State or within its possession. *Dunlap v. State*, 141 Idaho 50, 64, 106 P.3d 376, 390 (2004) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). A defendant's due process rights are violated when the prosecution fails to disclose exculpatory evidence that is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* However, a separate issue arises when the allegedly exculpatory evidence was not withheld by the State, but rather lost or destroyed by the State. *See Paradis v. State*, 110 Idaho 534, 539, 716 P.2d 1306, 1311 (1986).

In *Paradis*, we outlined a test for determining when a defendant's due process rights have been violated by the the State's loss or destruction of allegedly exculpatory evidence: "(1) whether the evidence was material to the question of guilt or the degree of punishment; (2) whether the defendant was prejudiced by the loss or destruction of the evidence; and (3) whether the government was acting in good faith when it destroyed or lost the evidence." 110 Idaho at 540–41, 716 P.2d at 1312–13.

Two years later, in *Youngblood*, the U.S. Supreme Court revisited the question of governmental loss or destruction of evidence when the evidence is of unknown evidentiary value. 488 U.S. at 51. *Youngblood* concerned the state's failure to preserve semen samples from the victim's body and clothing, resulting in the inability to analyze the evidence. *See id.* at 52. The Court held that, "[u]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*. at 58. The Court explained why bad faith is required:

> Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, *see Lisenba v. California*, 314 U.S. 219, 236 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.

*Id*. Requiring a defendant to show bad faith limits the "extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Id.*

In an attempt to define "bad faith," the U.S. Supreme Court referred to its earlier decision in *California v. Trombetta*, 467 U.S. 479 (1984) and explained that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n. *; *see also Stuart v. State*, 127 Idaho 806, 816, 907 P.2d 783, 793 (1995) ("[C]oncealment is one method of proving that the exculpatory value of the evidence was known to the government prior to its destruction."). Accordingly, the Court in *Youngblood* held that there was no violation of the Due Process Clause because there was no suggestion of bad faith. 488 U.S. at 58. "None of this information was concealed from respondent at trial, and the evidence—such as it was—was made available to respondent's expert who declined to perform any tests on the samples." *Id.*

In *Stuart*, we addressed the implication of *Youngblood* on our earlier decision in *Paradis*:

> In essence, for cases where the destroyed evidence is of unknown value, the Supreme Court's decision in *Youngblood* consolidates the three considerations which were enunciated in *Paradis*, through its reasoning that materiality and prejudice to the defense can be presumed where the government acts in bad faith as that term was defined by the Court in *Trombetta*.

127 Idaho at 816, 907 P.2d at 793. Here, the district court correctly found that the purported exculpatory evidence in this case was allegedly destroyed or deleted; therefore, it could not assess the materiality of it. Similarly, because the value of the purported Facebook evidence is unknown, we must apply *Youngblood* and restrict our inquiry to the existence of governmental bad faith.

Davis contends that the State acted in bad faith by allowing photographs on a witness's Facebook page to be deleted. According to Davis, the photographs depicted a camping trip he took with the victims on the same day the recordings of the victims were allegedly created. Davis argues that the State knew he wanted his attorney to preserve the photographs because it was aware that the investigating officers had intercepted a confidential letter from Davis to his attorney wherein he requested his attorney to obtain the photographs. Davis also argues that the State's alleged concealment of the letter indicates it knew of the exculpatory value of the photographs. The State contends that Davis has not shown bad faith on the part of the State because the alleged deletions of the Facebook photos were done by a *witness*, without its knowledge. The State also contends that Davis has not provided any evidence that the photographs were unavailable prior to the start of trial or that he could not have presented

evidence of the alleged destruction of the potentially exculpatory evidence by the witness. We agree.

Davis's claim rests largely on two connected claims: first, that the investigating officers "intercepted" a "CONFIDENTIAL letter between defendant and counsel discussing trial strategies"; and second, because the State knew that the police intercepted the letter and allegedly concealed that fact, the State had reason to know that the photographs possessed some exculpatory value and therefore, acted in bad faith when it did not preserve the photographs. As to the first claim, there is no evidence that the state "intercepted" the letter. Although it is concerning that the State was in possession of Davis's letter and apparently did not disclose that fact to the defense, Davis has not presented any evidence showing that the State "intercepted" the letter or even used it.[7] All we know from the record is that the State had the letter in its possession, but we do not know when or how the State came into possession of it. This alone is insufficient to show bad faith on the part of the State.

As to the second claim, we cannot presume that the State had knowledge of the exculpatory value of the deleted Facebook photographs just because the State had the letter in its possession. The letter in question was written by Davis in 2013 to his attorney in a different case. In the letter, Davis requested—among several other requests—that he obtain "pictures off [sic] FB," including pictures of "camping." First, there is no evidence in the record showing that the State concealed the letter. "Conceal" is defined as "prevent[ing] disclosure or recognition of" or "plac[ing] out of sight." Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/conceal (last visited Aug. 21, 2019). All we know about the letter from the record is that Davis received a copy of it in response to a record's request he filed with the State in 2017. Davis has not provided this Court with any other evidence showing that the State "concealed" the letter or that his attorney did not receive it. Therefore, we hold that Davis has not demonstrated that the State acted in bad faith by intentionally concealing the letter.

Second, it is unclear how a letter authored by Davis several years prior, in a different case, requesting that his attorney obtain photographs posted on Facebook, must necessarily lead

---

[7] The State has proffered no explanation as to how the letter came into its possession The district court made no findings as to the circumstances surrounding the appearance of the letter or whether it was improperly used by the State. While we are concerned about the implications of these circumstances, both legally and ethically, there is simply insufficient evidence in the record for us to draw any conclusions. Most importantly, although Davis has referenced the letter in support of his arguments to show that the State may have had knowledge of potentially exculpatory evidence, he has not raised law enforcement's possession of the letter as a discrete issue on appeal.

to a conclusion that those records contained exculpatory evidence. For example, just because Davis was with the boys at a lake during the day, does not mean they all could not have returned later to the house that same day. The record does not even indicate whether the Facebook photographs still existed at the time the State came into possession of the letter, whenever that may have been. Most importantly, it is unclear why the State would have any reason to delete the photographs. Davis alleges that the photographs "would have undermined the State's theory that Mr. Davis had created [the sexually exploitative material]"; however, Davis was charged and convicted of *possessing* sexually exploitative material, not creating it. It is irrelevant whether he *created* the material as long as he knowingly and willfully had the recordings in his possession. Moreover, Davis only alleges that he was camping with two of the victims, *i.e.*, T.B. and Z.B. Yet Davis was charged and convicted of "knowingly and willfully hav[ing] in his possession material sexually exploiting a child under the age of eighteen years, to-wit: a video of CG, DOB: January 16, 1996, engaged in sexual intercourse with TH aka TB." Accordingly, Davis still had in his possession sexually exploitative material of another minor, *i.e.*, C.G., who apparently was not on the camping trip.

In sum, like the district court, we cannot conclude from the record what the purported Facebook pictures depicted, or whether they ever existed. On appeal, Davis speculatively asserts that the photographs would have proved that he did not create the recordings. Even if that assertion were true, this is not an element of the charged crime. The evidence at trial established, and Davis does not deny, that the illicit recordings were present on his computer. Therefore, the allegedly destroyed Facebook photographs would not have supported a conclusion that the State failed to preserve the evidence in an effort to prevent Davis from obtaining exculpatory evidence because the evidence would not have been exculpatory. For these reasons, Davis's claim fails as he cannot prove bad faith on the part of the State.

## V. CONCLUSION

We affirm Davis's judgment of conviction in the sexual misconduct case.

Chief Justice BURDICK, Justices BRODY, BEVAN and STEGNER **CONCUR.**